Sarah D. McWhirter

*v.*

Arthur Newell *et al.*

*Opinion filed February 18, 1903.*

1. Cemeteries—*purchaser of lot acquires an easement for burial purposes.* The sale of lots in a public cemetery does not pass title in fee, but assures to the grantee an easement for burial purposes so long as the ground is used for a cemetery, and this easement passes to the grantee's family at his death.

2. Same—*trustees of cemetery cannot divest grantee's easement.* Trustees of a cemetery, who hold the fee of lots in trust for the purchasers, have no power, after conveying a lot to a certain person, to subsequently apply the lot, or any portion thereof, to the use of another person until the original grantee or his family have abandoned the lot.

3. Same—*when the ownership of a cemetery lot should not be disturbed.* Ownership in a cemetery lot which has been recognized by the trustees for over forty years should not be disturbed because the record books do not show, upon their face, that the grantee had paid for the lot, particularly where such books are shown to have been carelessly kept.

Appeal from the Circuit Court of LaSalle county; the Hon. Charles Blanchard, Judge, presiding.

This is a bill, filed on February 26, 1902, in the circuit court of LaSalle county by the appellees, children and heirs of Thomas Newell and Sarah, his wife, against the appellant, alleging that Thomas Newell in his lifetime, and on February 28, 1856, bought a lot, known as lot 14 in the Troy Grove cemetery in the village of Troy Grove, and thereby became the owner of said lot, and entitled to the sole and exclusive right to use the same for burial purposes and to the exclusive easement and enjoyment of the privileges of said lot for burial purposes for himself and his family; that, from that time to February 19, 1890, he and his family and heirs exercised and enjoyed the open and exclusive and continuous possession of said lot for said purposes without interference on the part of

any one; that Thomas Newell died intestate during the late civil war, and left him surviving his widow, Sarah Newell, and the appellees, Arthur Newell and Eli Newell, his only heirs-at-law; that, when he purchased said lot, he received from the trustees of the cemetery a certificate of sale, but that the same was never recorded and could not be found after his death; that, on February 28, 1856, Thomas Newell caused to be buried on said lot a son of his, named William H. Newell, and on May 3, 1856, a daughter, named Ella Newell, and, in the winter of 1859, another son named Charles; that two of these children were buried on the north half of said lot, and one on the south half; that neither he, nor his widow or heirs, at any time abandoned said lot as their burial lot; that in February, 1890, appellant obtained from the village of Troy Grove a certificate of sale of the north half of said lot in Troy Grove cemetery, and, without the knowledge of the widow of Thomas Newell or his children, buried the body of her husband, Robert McWhirter, on the north half of said lot 14; that, for two years after the burial of said Robert McWhirter, neither the appellees, nor their mother, Sarah West, formerly Sarah Newell, had any knowledge that the north half of said lot was used for the burial of any other than their own family; that about that time, to-wit, February, 1892, they learned that the body of McWhirter was buried on the north half of said lot, and that his widow, the appellant Sarah D. McWhirter, claimed title to said north half; that appellees and the widow of Thomas Newell protested to the village board of Troy Grove; that appellant was notified by the village board that the north half of said lot belonged to Thomas Newell, and that she would be compelled to move her dead from said lot; that appellant refused to make such removal; that, at that time and since, the village board of Troy Grove have agreed to remove the body of appellant's husband, and to give her another lot, and to move the tombstone, but appellant

refuses so to do, asking damages; that she refuses to de-
liver up to be canceled the certificate to her, and recorded
the same on January 30, 1902, in the recorder's office
of LaSalle county; that the certificate is a cloud on the
title of appellees; that Sarah Newell died intestate in
1893, leaving appellee, Anna Wallace, surviving as her
heir-at-law, and that her body was buried on said lot 14;
that appellees cannot have the enjoyment of said lot
while appellant claims title and seeks to exercise con-
trol over the north half thereof; that appellees cannot
properly place a monument on said lot, as they desire to
do, because of appellant's claim to the north half thereof.
The bill further alleges that in 1853, one Levi Kelsey do-
nated and deeded a parcel of land in said village to three
persons in trust to be used as a cemetery; that said trus-
tees accepted the title for such uses, and undertook to
discharge the trust by laying out and platting said land
to be used as a cemetery, and kept a record of their pro-
ceedings in a certain book, now in the possession of the
clerk of the village board of Troy Grove; that said trus-
tees in 1886 conveyed said property, so platted and laid
out as a cemetery, to the village of Troy Grove. The bill
prays that any supposed right or interest of appellant,
under the certificate held by her in and to the north half
of said lot, be declared void; that the certificate be or-
dered to be delivered up to be canceled as a cloud upon
the title of appellees; that the title, privileges and ease-
ment of appellees in said lot 14 may be confirmed, and
they declared to be the lawful owners of said lot together
with the easements, etc.; and that the appellant be com-
pelled to vacate and remove the body of her dead, and
be enjoined from using said lot.

The answer, filed by appellant on April 15, 1902, de-
nied that appellees were the owners of the north half of
said lot and claimed that she purchased the same on or
about February 19, 1890, at which time her husband died,
and received from said village a certificate, showing her

interest in said lot, which certificate was duly recorded; that the certificate issued to her was so issued to her on March 24, 1890, to the north half of said lot 14; that said certificate was approved by the president and clerk of said village; and that appellant has occupied the north half of said lot peaceably for nearly twelve years; that she endeavored to purchase from Sarah Newell, widow of Thomas Newell, the south half of said lot, but said Sarah Newell refused to sell the same.

It appears from the testimony, that Thomas Newell died in Missouri in the year 1862, while a soldier in the United States army, and was there buried. It also appears that, after the death of Thomas Newell, his widow, Sarah Newell, married a man by the name of West, and that the appellee, Anna Wallace, is the daughter of the widow of Thomas Newell by West, her second husband, although the witnesses called her Mrs. Newell, instead of Mrs. West, in giving their testimony.

When the case was at issue, it was referred to a master in chancery to take and report the proofs, and his findings. The master took testimony, oral and documentary, and made a report finding the facts in favor of the appellees, the complainants below, and recommending that a decree be entered, finding the equities to be with appellees, and decreeing that the appellant should, without unreasonable delay, remove the body of her deceased husband from the north half of lot 14 in said cemetery, together with the monument and improvements erected by her thereon. Objections were filed by the appellant to this report and overruled. Exceptions were also filed to the report, which were overruled by the court. On June 25, 1902, the court rendered a final decree, overruling the exceptions to the master's report, confirming the same, and finding the facts in favor of the appellees, and decreeing that the appellees are the owners of, and entitled to, all the privileges, licenses and easements of said lot 14 for burial purposes; that appellant is without

right, title, interest, privilege or license in and to said
lot or any part thereof, in Troy Grove cemetery; that
the certificate issued to her on March 24, 1890, is void,
and so declared; and that appellant, without unreason-
able delay, remove the body of her husband from the
north half of said lot, etc.

DUNCAN & DOYLE, for appellant.

H. M. KELLY, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion
of the court:

The questions involved in this case, as presented by
counsel in their briefs, are principally questions of fact.
These facts both the master and the chancellor below
have found in favor of the present appellees. After a
careful examination of the record, we are of the opinion
that the findings of the master and the decree of the
court are sustained by the evidence.

*First*—Counsel for appellant make five points, or take
five positions in reference to the showing of the testi-
mony as to the facts in this case. In disposing of the
case we will refer only to these five points, as arising
out of the errors assigned upon the record.

The first and second points, so made by counsel for
appellant, will be considered together. They are, first,
that the records of the village of Troy Grove do not show
that this cemetery lot 14 was set apart, sold or devoted
to the use of Thomas Newell, or that any of his children
were buried on the north half of said lot; and, second,
that the original entries on the cemetery books do not
show that lot 14 was sold, assigned and set over to the
deceased, Thomas Newell, as a whole. What was subse-
quently known as the village of Troy Grove was origi-
nally known as the village of Homer, and the cemetery,
subsequently known as the Troy Grove cemetery, was

originally known as the Homer burying ground. A record book was introduced in evidence, which had been made and kept by the trustees of the Homer burying ground from 1853 to 1871. This book showed Thomas Newell to be the sole owner of all of lot 14 in the burying ground in question during the period from 1853 to 1871. A witness, who was village clerk of Troy Grove, and had been for eight or ten years, and who had the books, pertaining to the cemetery, in his possession, produced the book in question, and two others, as the village cemetery records of the Troy Grove cemetery. The name of Thomas Newell was marked upon this book of records of the Homer burying ground as the owner of lot 14. The testimony. also shows that the book thus referred to was revised in 1871 by the trustees, and its contents were transferred into another book, and this other book was kept as the record of the cemetery down to the year 1886 after the incorporation of the village of Troy Grove. In this second book, extending over the period from 1871 to 1886, the name of Thomas Newell appears as the sole owner of the whole of lot 14. In a column for remarks in this book appears also the following statement opposite to, and in connection with, the designation of lot 14, to-wit: "Apparently empty; years ago two little children buried there." In 1886 the records of the burying ground were revised by one or more of the officers of the village of Troy Grove a second time. The officer, who made the revision, swears that, when he made out this third book, the name of Thomas Newell appeared as the sole owner of all of lot 14. There is testimony, tending to show that, after appellant took possession of the north half of lot 14, her name was written over that of Newell, but when or by whom it was done is not shown by the evidence. Newell's name appears to have been scratched out and McWhirter's name written above. The evidence, in our opinion, shows that Newell was recorded and recognized as the sole owner of lot 14 up to the time when appellant

took possession of the north half thereof in February, 1890. No other person than Thomas Newell is shown by these books to have had any interest in said lot until some time after February, 1890, when the last record book appears to have been changed by some unknown person. One of the witnesses, who had been a member of the village board for three or four years, swears that he examined the records in regard to this cemetery, and did not find upon such examination the name of Sarah D. McWhirter in the records as the owner of this lot, or any part of it.

The certificate issued to the appellant on March 24, 1890, is to the following effect: "Know all men by these presents, that Sarah D. McWhirter has paid to the clerk of the village of Troy Grove, the sum of $5.00 for the north half of lot 14 in Troy Grove cemetery, and is hereby entitled to all the privileges thereof." This certificate was signed by the then president of the board of trustees of the village of Troy Grove, who died before the testimony was taken in this case, and also by the village clerk. The testimony leaves it somewhat doubtful, however, as to whether the issuance of this paper was ever authorized by the board of trustees of the village.

The court below correctly found under the testimony that Thomas Newell buried two children upon said lot in the year 1856, and the third child thereon in the year 1859, and that at least two of them were buried upon the north half of the lot. The testimony also shows that, some years thereafter, a nephew of Mrs. Newell, the child of her sister, was buried on the south half of the lot. Mrs. Newell, or Mrs. West, herself died in 1892, and was buried upon the south half of the lot.

The Troy Grove cemetery is a public cemetery, having been conveyed by the original trustees who laid out and platted the land embraced within it, to the village of Troy Grove, formerly known as the village of Homer. As it is a public cemetery, the sale of lots therein does

not pass to the grantees the title in fee to such lots, but thereby assures to the grantee a license or easement therein for burial purposes, so long as the cemetery shall be used for cemetery purposes. This license or easement becomes the property of the family of the original grantee of the lot upon his or her decease. The fee of the lots in such case remains in the trustees of the cemetery, or their grantees, the trustees of the village, in trust for the use and benefit of the association and of the lot owners. "Generally the right in the lot is an easement only, the right to use it for burial and cemetery purposes, but with no other interest in the fee." (Perley's Mortuary Law, p. 178; *Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y. 503; *Hancock* v. *McAvoy*, 151 Pa. St. 464).

In *Hook* v. *Joyce*, (Ky.) 21 L. R. A. 96, it was said: "It seems to us burial of the dead is the only possession, where claimed and known, necessary to ultimately create complete ownership of the easement, so as to render it inheritable."

It is true that, in the case at bar, no monument was erected by Thomas Newell, or his widow and heirs, upon the lot here in controversy, but at least four members of his family were buried upon the lot before the death of his widow in 1892. The burial of these persons upon the lot could easily be ascertained, and was apparent and well known, and, during all the time from 1856 to 1890, the Newell family was recognized, and stood upon the records, as the owners of the lot.

*Second*—Another point, made by counsel for appellant, is that Thomas Newell did not pay for the lot, and that, as he did not pay for it, he and his heirs were not vested with the license or easement in the premises with the rights and privileges therein for burial purposes during the period from the time of his original purchase to the year 1890, or 1892. It is true that the three record books, introduced in evidence, do not state upon their face that Newell paid for the lot. But he is noted in the proper

column for that purpose as the owner of the lot, and the implication is that, being owner, he had paid for it. Moreover, the proof shows that in 1892, when Mrs. Newell, the widow of Thomas Newell, discovered for the first time that the appellant had buried her husband upon the north half of the lot, Mrs. Newell, or some of her family, made complaint to the village board, and the board made an investigation in regard to the ownership of the lot. One of the village officials states that he examined the papers and books of the deceased Thomas Newell, and found an entry in Newell's ledger that the lot had been paid for. The court below correctly found, under the evidence, that the license or easement in question rested in Thomas Newell and his heirs-at-law for nearly forty years, unquestioned and undisputed by the trustees of said cemetery. In view of this fact, the ownership of the Newell family in the lot should not be disturbed, even though the record books of the cemetery do not state upon their face that Newell paid for the lot. There is testimony in the record, tending to show that the books were not accurately kept in this regard, inasmuch as other persons, who obtained lots in the cemetery and paid for them, failed to find the fact of such payment minuted upon the records.

*Third*—It is furthermore claimed on the part of the appellant, that the court below erred in not finding that Thomas Newell's heirs or family acquiesced in appellant's possession of said premises to such an extent, and for such a length of time, as to constitute an abandonment of their rights and privileges therein for burial purposes. The finding of the master and of the chancellor below in this regard was correct. Neither Mrs. Newell, nor her children, knew of the interment of the body of appellant's husband upon the north half of said lot until the spring of 1892, two years after the burial of appellant's deceased husband. At that time one Keenan interred the body of a child on the south half of the lot.

This action came to the ears of Mrs. Newell's daughter, Mrs. Anna Wallace, and the latter took such action before the board of trustees of the village of Troy Grove, as resulted in the removal of the body of said child from the south half of the lot. At the same time, appellee, Wallace, learned of the burial of appellant's husband upon the north half of the lot, and made complaint in regard to the same to the board of trustees of the village. While, however, the family of the Keenan child consented to remove it, the appellant refused to remove the remains of her husband. A committee was appointed to wait upon appellant, and made her an offer to give her another lot, and to remove the body of her husband, and all her improvements, to such other lot without expense to her, but said offer was rejected by her. The evidence of the appellant herself shows that, for years after 1892, applications were made to her by the Newell family to remove the remains of her husband from the lot. But during all the time in question the Newell family, as holders of the license or easement in this lot, resided in the vicinity of the cemetery where it was located. The trustees of the cemetery had no right to revoke the license or easement granted to the Newell family, or divert the lot to the use of any other persons than the Newell family. The trustees of a public cemetery have no authority, after having once set aside and devoted a certain lot to a certain person or his family, to subsequently exercise any acts of control over the lot in the way of applying it, or devoting it, or any portion of it, to the use of any other person, until the original grantee or owner of the license or easement in the lot, or his descendants and family have abandoned the lot, either by removing from the vicinity of the cemetery, or by the extinguishment of the family as a component part of the community, or in some other way. We find no evidence in the record that amounts to an abandonment of the lot

by the Newell family, or that amounts to an acquiescence in the use of the north half of the lot by the appellant.

*Fourth*—Appellant makes the general objection that the court below erred in finding the equities of the case with the appellees, and in decreeing that appellees were the owners of the lot, and that appellant was without right, title, privilege or license therein. We think that this finding of the court below was correct, as appears from what has already been stated in reference to the objections of appellant, considered above. In addition, however, to what has been said, the proof shows that appellant had notice of the interest of the Newell family in this lot before she received the certificate issued to her on March 24, 1890. Her husband died on February 19, 1890, and was buried on February 21, 1890. Her brother, a man by the name of Stevenson, who represented her, called upon one of the officials of the cemetery before her husband's burial with a view of buying a lot for Mrs. McWhirter, and was informed that this lot belonged to Thomas Newell. The witness, testifying upon this point, states quite positively that the party, thus seeking to purchase a burial lot for the appellant, was informed that Thomas Newell owned the lot. The testimony also shows that, in digging the grave where appellant's husband was to be buried on the north half of the lot, they dug into another grave which was already there, and which was evidently the grave of one of the children of the deceased Thomas Newell. The testimony also shows that some six or seven weeks before Mrs. Newell, or Mrs. West, died in 1892, and shortly after her discovery of the burial of appellant's husband upon the north half of the lot, the appellant approached Mrs. Newell with an offer to purchase the north half of the lot, which offer was declined. All these circumstances, and others which might be mentioned, show that appellant had knowledge of the ownership of the lot by the Newells before the issuance of the certificate of sale to her, and that,

200—38

shortly after she received this knowledge, she took possession of.the lot.

For the reasons above stated, we are of the opinion that the decree of the circuit court is correct, and it is accordingly affirmed.                    *Decree affirmed.*