(No. 11881.—Reversed and remanded.)

W. W. Brown *et al.* Defendants in Error, *vs.* B. J. Hill *et al.* Plaintiffs in Error.

*Opinion filed June 20, 1918.*

1. Cemeteries—*property rights of possessor of lot in a cemetery.* The possessor of a lot in a cemetery does not acquire a fee simple title but has a property right which the law protects from invasion, whether by a mere trespasser or by the trustees of the cemetery; and this right continues as long as the place is used as a burial ground, but is subject to municipal regulation and is legally revocable whenever the public necessity requires.

2. Same—*right of burial includes right of erecting mounds and monuments.* The possessor of a lot in a cemetery has a right to bury therein according to the usual custom in the neighborhood, including the right of making mounds over and erecting stones and monuments at the graves, and the right to make such erections necessarily carries with it the right to protect them from spoliation.

3. Same—*equity may enjoin owner of burial ground from defacing graves.* A court of equity will enjoin the legal owner of land deeded or dedicated for burial purposes from defacing or meddling with the graves therein, at the suit of any party having relatives or friends buried therein.

4. Same—*trustees of burial ground cannot change lines of lots in use.* Trustees of land deeded for burial purposes, though it is

not a cemetery created under the statute, are entitled to have a certain supervision over the lots; but even though persons have been permitted to choose their own burial lots without charge, the trustees cannot disturb the graves or change the lines of lots in use for burial purposes when re-platting the unused portion of the ground.

5. SAME—*right of trustees of burial ground to sell unused lots.* Trustees of land deeded for burial purposes in a community may re-plat the portion of the ground not already in use and sell the lots for burial purposes notwithstanding no charge has previously been made for burial lots, where there is nothing in the deed to the trustees requiring the lots to be free; but no portion of the lots already in use can be encroached upon or sold.

WRIT OF ERROR to the Circuit Court of Edwards county; the Hon. J. C. EAGLETON, Judge, presiding.

GEORGE D. NEGLEY, NOAH C. BAINUM, and JACOB I. GROSSMANN, for plaintiffs in error.

CREIGHTON & THOMAS, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill filed by defendants in error in the circuit court of Edwards county for an injunction restraining plaintiffs in error, as trustees of the Bethsaida Church and Burial Ground, in said county, from carrying out certain plans with reference to the burial ground. A preliminary injunction was entered, and after the pleadings were settled by an amended bill, answer and replication, a hearing was had before the chancellor and a decree entered making said injunction permanent. From that decree this writ of error was sued out.

The amended bill alleges that the complainants live in the neighborhood of said cemetery and have relatives and friends buried therein and expect to be buried there themselves when their appointed time comes; that about 1840 Robert Willis conveyed to William Curtis, a minister of the gospel, about forty acres of land in said county, described in the bill, and immediately thereafter said premises began to

be used as a public burial ground, free to all the neighbor-
hood, regardless of church affiliation; that on March 4,
1859, Curtis and wife by warranty deed conveyed ten acres
of said tract (describing it) to five persons described as
"trustees of Bethsaida Meeting House," and their succes-
sors, "in trust and perpetuity forever, for the purpose of
erecting a church and maintaining the same as a place of
religious worship to Almighty God and for the purpose
of burying the dead, and for no other purpose or purposes
whatsoever;" that by another conveyance in 1871 Curtis
and wife conveyed to five persons named therein said ten-
acre tract, the grantees in this last deed being designated
as "trustees of the burial ground and place of religious wor-
ship to Almighty God, hereinafter named and described,"
the purpose of the trust not being further designated; that
the present trustees named as defendants in the amended
bill are the successors in trust of the trustees appointed by
said last mentioned deed; that in 1843 Elizabeth Kershaw
was buried in said burial ground, and from that time up
to the date of filing the bill the burial ground has been used
freely by the whole neighborhood; that during the early
part of the existence of said cemetery there were no lots
laid off or platted, each family choosing its own location
for the burial of its dead; that between 1876 and 1880
the then trustees platted the burial ground into lots, not
disarranging family locations as theretofore appropriated,
but conforming, in platting the land, to the lots already oc-
cupied in said cemetery; that all the neighborhood adopted
said plat and thereafter dug their graves in accordance with
the plat. The amended bill further alleges that various lot
holders erected brick or other monuments at the corners
of their lots; that said plat, and a copy made after the
original one had become worn and illegible, were consid-
ered as showing the arrangement of the burial ground for
many years; that shortly before the filing of the bill herein
the trustees started to re-plat the cemetery and change the

lines of the lots; that under the old plat the dimensions of said lots as used were 8x20 feet, and that said lots were so dimensioned, platted and marked accordingly; that the plaintiffs in error, in considering plans for re-platting said cemetery, were not adhering and did not intend to adhere to the scheme of the old plat, and started to change the size of said lots from 7x20 feet, as laid off in said plat, to 8x20 feet. Neither counsel have called attention to this seeming contradiction in the allegations of the bill. Either the first allegation that the original lots were laid off 8x20 feet is incorrect or the last one is incorrect. The amended bill further alleges that by reason of the changes proposed to be made in re-platting the cemetery many of the old family burial lots will become parts of two lots, and that in one instance a grave will be located in four of the new lots; that the trustees have commenced to dig up the brick markers and some stone markers that have been erected and threaten to remove all such markers; that the trustees have commenced to excavate for new markers, and some of the new markers have been placed on the graves of those buried in the cemetery; that the trustees have dug post holes in eight of the graves and threaten to dig others, and they also threaten to sell the lots so laid off, including those on which the relatives and friends of complainants are buried.

Plaintiffs in error, the trustees, answered, admitting the premises had been used for a burial ground by the general public since 1843 but insisting that the use of said premises was always under the direction and permission of the trustees of said church and burial ground. They further admit the making of the plat between 1876 and 1880, but aver that the plat was made under the direction and supervision of the trustees; that while the trustees always acquiesced in the wishes of those who had dead buried in the cemetery when they could do so without material disarrangement of the plans of the burial ground, yet the trustees have always reserved the right to arrange the lots, fences, corner stones,

markers, etc., as they desired and never yielded the supervision thereof to anyone. The answer further denied that the re-platting of the burial ground will cause any material change in the lots. It further denied that the lots will be divided into parts and that one particular grave will be located in four different lots in the new plat. It further denies that they have commenced to remove markers or expect to remove them or have excavated for new markers. The answer, however, admits that the trustees have dug a number of post holes in graves, but aver that said holes have been dug for the protection of the burial ground and do not desecrate the graves. They deny that they are expecting to sell lots on which graves are located, but insist that the only lots they intend to sell are those which have never been used for burial purposes. The answer further avers that plaintiffs in error are the trustees of the burial ground; that a large part of said ground has been used for many years, with the permission of the trustees, for the burial of the dead; that there has never been any systematic arrangement of the burial ground, and that therefore the relatives and friends of those buried there cannot find the graves or definitely locate the lots, and for the purpose of remedying this condition said trustees some time ago undertook to re-plat, re-fence and re-mark the lots for the purpose of putting the cemetery into proper shape and condition; that when they became aware that their desires in this respect were meeting much opposition they determined to go no further in the matter and have done nothing since the serving of the first writ of injunction on them.

The evidence on the hearing before the chancellor is not preserved in the record here but the decree makes a certain finding of facts. The material parts of the decree bearing on the questions to be considered here are as follows: That said cemetery "since 1843 has been used as a free burial ground by the old neighborhood, and that during the earlier part of the existence of such cemetery there were no lots

sold or platted off but each family used its own location for the burial of its dead; * * * that brick markers were erected at the corners of said lots, with the numbers of such lots painted thereon, and that the arrangement of said burial ground had been ever since in accord with such arrangement; * * * that before the filing of this bill the trustees started to re-plat the said cemetery, not adhering to the plat as set forth aforesaid, and that the defendants commenced to excavate in said yard places for new markings and were threatening to place in position in said cemetery such new markings; * * * that post holes have been dug in eight of the graves in said cemetery," and that the cemetery authorities are threatening "to sell the said lots both in the new and old portion of the cemetery." The court granted a perpetual injunction against each and all the defendants and each and all of their agents, servants or employees, perpetually restraining them "from digging into the graves located in said cemetery, located on the northeast quarter of the southwest quarter of the northeast quarter of section 14, town 3, south of range 10, east, in Edwards county, Illinois, and from placing markers within the lots so located in said cemetery, from removing the markers now remaining in said cemetery, and from selling any lots within said cemetery or in any manner interfering with the graves or the lots in said cemetery."

Counsel for plaintiffs in error contend that there has never been any dedication of the land in question as a burial ground; that the mere permission to others than members of the church to bury their dead therein did not divest the title of the trustees in any portion of the burial ground nor lessen their rights or powers over said portion of the cemetery. This court has held that the sale of lots in a public cemetery does not pass title in fee but assures to the grantee an easement for burial purposes so long as the ground is used for a cemetery, and this easement passes to the grantee's family at his death. (*McWhirter* v. *Newell,*

*200* Ill. 583, and cases cited.) And this seems to be the general rule in other jurisdictions. 5 R. C. L. 244, 245. See, also, 5 Am. & Eng. Ency. of Law,—2d ed.—785.

The case at bar has many points in common, on the facts, as to dedication, with *Davidson* v. *Reed,* 111 Ill. 167. It was there held that a graveyard might be dedicated as such by the act of the owner of the land in permitting others to bury their dead on it, the owner having in that case stated that he "expected the neighbors would want to bury there, as we had commenced it." It was also held in that case that the assent of the owner of the land that it "should be appropriated for the burial of the dead is clear and manifest. That the public accepted and used the land for the public purpose for which it was designated by the owner is also beyond dispute." See to the same effect, *Wormley* v. *Wormley,* 207 Ill. 411, and cases there cited.

We find nothing in this record that indicates why this land was originally deeded to Curtis, but it is clear that certain of the land so deeded to him has been used for the burial of the dead as far back as 1843. The two deeds from Curtis show, beyond question, that the land was to be used for burial purposes. It is also clear that the public accepted and used the land for the purposes of burial from that time until these proceedings were instituted. There is nothing in the two deeds of trust executed by Curtis and his wife that states in any way whether or not the cemetery was to be used for burial purposes free of charge to those who desired to have their friends and relatives buried there, although without question, on this record, it must be held that no charges have heretofore been made by the trustees as a condition precedent to permit anyone to bury friends and relatives there. Apparently everyone in the neighborhood, regardless of church affiliations, was permitted, free of charge, to bury relatives and friends in the cemetery.

Places of burial for the dead have been held in great reverence from the earliest biblical times. Abraham, many

centuries ago, declined the courtesy offered by the children
of Heth to permit him to bury his dead in their land free
of charge, preferring to purchase and hold as his own a
tract of land, in order that, although a nomad himself, he
might have a settled place for the burial of those dear to
him.   (See for a historical discussion upon this question,
*Schoonmaker* v. *Reformed Church*, 5 How. Pr. 265.)   Even
though a purchaser, or one who is permitted to use a lot in
a cemetery, obtaining it by adverse possession, may not ac-
quire a fee simple title but simply an easement, and must
use it subject to and in accordance with the reasonable by-
laws and rules of the cemetery, yet he has a property right
in his lot which the law recognizes and protects from in-
vasion, whether it be by a mere trespasser or from the un-
authorized and illegal acts of the directors of the corpora-
tion itself.   Moreover, his remedy is commensurate with
his rights, and he may maintain either trespass for damages
or obtain a remedy by injunction to enforce and uphold his
rights whenever necessary.   The right of possession will
continue so long as the cemetery continues to be used for
that purpose.   (5 R. C. L. 245.)   The right of burial in
a cemetery is not an absolute right of property but merely
a privilege or license, to be enjoyed so long as the place
continues to be used as a burial ground, subject to municipal
regulation and control, and legally revocable whenever the
public necessity requires.   It is a right of limited use for
purposes of interment.   By some authorities it is held that
a grant of a lot in a cemetery is analogous to a grant of a
pew in a church, and that the right of burial in a public
burial ground in some respects resembles the right of pew
tenancy.   The right to bury carries with it the right to do
so according to the usual custom in the neighborhood, and
undoubtedly includes the right of making mounds over and
erecting stones and monuments at the graves; and the right
to make such erections necessarily carries with it the right
to protect them from spoliation.   It is well settled that a

court of equity will enjoin the owner of land from defacing or meddling with graves on land used for public burial purposes, at the suit of any party having deceased relatives or friends buried therein. 5 R. C. L. 247, 248; *McWhirter* v. *Newell, supra; Davidson* v. *Reed, supra.*

We are in full accord with that portion of the decree which forbids the trustees from digging into or desecrating the graves needlessly, or from changing the lot lines of the occupied portion, or placing posts or new markers in places where the graves are located. The trustees of the burial ground, however, are entitled to have a certain supervision over the lots in the cemetery. If any burial lot, for instance, becomes so overgrown with weeds or otherwise unsightly as to seriously disfigure the burial ground the trustees can cause that condition to be changed. If any of the monuments or markers become in such a ruinous condition as to disfigure the rest of the cemetery the trustees would have the power to either have them repaired by the friends or relatives or removed, and the trustees might also be permitted to mark the corners of the lots with simple markers, so long as they did not disturb the graves themselves, but we do not think that the trustees could cause the monuments or markers or corner stones of lots which were in reasonably good condition to be removed or changed against the wishes of the lot owners, merely for the purpose of beautifying the cemetery or rendering it more convenient or uniform. Neither do we think the trustees could re-plat the old portion of the cemetery in such a manner as to change the size of the original lots. While the trustees have a right to re-plat that portion of the cemetery not occupied for burial purposes and change the size of the lots if they desire to do so, in so doing they have no right to interfere in any way with the size of the old lots as platted and occupied theretofore. The trustees would have no right to sell to others any portion of any of the old lots as platted and occupied for burial purposes, nor could they in any way

encroach upon any old lot as theretofore platted and occupied, even though the encroachment was not of sufficient extent to interfere in any way with the remains of any deceased person theretofore buried on such lot.

The decree orders that the trustees shall not sell any lots within the cemetery, and this order is entered regardless of whether such sales shall interfere with any of the old lots or not,—that is, the decree absolutely forbids the sale of any of the property for new lots by the trustees to others even though the sale of such new lots interferes in no manner and encroaches in no way upon the old lots as platted and occupied for burial purposes. The question as to whether this portion of the decree is correct is not free from difficulty. As already stated, the deeds in no way defined or limited the purposes of the trust in this regard. They do not say the land shall be used for free burial purposes or whether it shall be sold for those purposes. The only provision is that it shall be used for all time to come for burial and church purposes. This court has held that in public cemeteries, created under the statute, the sale of lots is authorized, (*McWhirter* v. *Newell, supra,*) and we believe it to be the common practice with all public cemeteries to sell lots to purchasers for the burial of their friends or relatives. If a public cemetery, or a cemetery such as the evidence shows this to be, is to be kept in good order and free from noxious weeds and other things that would tend to disfigure it there must be some method of obtaining an income for that purpose by the cemetery authorities, either by taxing the lot owners or raising from endowments so much a year for that purpose, as is done in some cases, or through the sale of the lots, or both. We see no reason why under this trust the authorities of this cemetery should not be permitted to sell lots in the unused portion of this cemetery, for a reasonable price, for burial purposes. There is nothing in the record to assist us in deciding what would be a reasonable price and no arbitrary rule can be laid down

as to that. A reasonable price would depend upon the circumstances and surroundings, and may change from time to time as the conditions of society and the methods of caring for the cemetery may change. In our judgment the decree is incorrect in forbidding the trustees, perpetually, from selling any lots within said cemetery.

We think the decree is too broad, also, in perpetually enjoining the trustees from in any manner interfering with the graves and lots in the cemetery. This is a question that can be best settled by reasonable agreement between the trustees and those who are interested in the burial lots now used for burial purposes in said cemetery, without the written decree of the court. But if they cannot agree, we think the rules that have been laid down in this opinion will be a sufficient guide to enter a specific and definite decree that will protect not only the rights of the people of the neighborhood in the burial lots already occupied by the remains of their deceased relatives and friends, but will fully protect the trustees in their right to oversee in a proper manner not only the new portion but the old portion of said burial ground.

We find considerable discussion in the briefs as to whether the decree of the court was entered at the proper time and in a proper manner, whether the amendment to the bill was properly allowed, and some other questions with reference to the pleadings, but in view of our findings on the merits of the case, and in view of the fact that the decree must be reversed on other grounds, we find no necessity to consider or discuss the other questions raised in the briefs.

The decree of the circuit court will be reversed and the cause remanded for further proceedings, including a modification of the injunction, in harmony with the views herein set forth.

*Reversed and remanded.*