**William Knox Steele, Appellant, v. Rosehill Cemetery Company, Appellee.**

**Gen. No. 39,955.**

McSURELY, J., dissenting.

Opinion filed April 11, 1938. Rehearing denied April 25, 1938.

FRANCIS M. LOWES, of Chicago, for appellant.

ASHCRAFT & ASHCRAFT, of Chicago, for appellee; CARROLL J. LORD and RUFUS D. BEACH, both of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

William Knox Steele, the owner of a lot in defendant cemetery, filed his complaint in equity alleging that he inherited the lot from his wife, who inherited it from her father, who obtained title to the lot by warranty deed from the Rosehill Cemetery Company October 25, 1866; that plaintiff, as owner of the lot in fee simple, was entitled, when the time came, to be buried there without paying defendant $403 for its claimed charges for cutting grass on the lot from 1926 to 1936; that he was entitled to recover $151 from defendant, which he paid to it under protest as a condition for the burial of his wife on the lot on November 10, 1926, and that being the owner in fee simple, he had the right to alienate parts of the lot not needed for burial purposes without the payment of $3,878.95 which defendant demanded as a condition to its consent to such alienation.

The theory of defendant was that plaintiff did not own the lot in fee simple but had a mere right of easement for burial purposes; that defendant had the right to require plaintiff to pay $151 and $403 to defray the expense in cutting the grass from the lot over a period of years and that it had the right to impose the payment of $3,878.95 to put the lot under perpetual care as a condition to its consenting to plaintiff selling parts

of the lot. There was a hearing before the chancellor, finding the equity against plaintiff, a decree entered dismissing his bill, and he appeals.

The material facts, in short compass, are that defendant, Rosehill Cemetery Company, was incorporated by a special act of the legislature approved February 11, 1859. By the act certain named individuals were created a corporate body as the Rosehill Cemetery Company; with a board of managers who were authorized to purchase real estate not exceeding 500 acres for cemetery purposes in the township of Lake View, Cook county, Illinois, were given power to lay out and ornament the grounds for a cemetery and to make such "rules and regulations from time to time, for the government of lot holders and visitors to the cemetery as they deem necessary"; that all lots sold for burial purposes be free from taxation, execution and attachment provided that no person should hold at any one time more than four lots so exempted. Section 6 of the act provided: "Every lot sold by the cemetery company for burial purposes shall be held by the proprietor for the purpose of sepulture only, and shall be transferable only by the consent of the managers, and no lot holder shall permit interment in or upon any lot held by him, for a consideration." February 13, 1863, the charter of the Rosehill Cemetery Company was amended by an act of the legislature, the preamble of which recites: "WHEREAS, the lot holders in Rosehill Cemetery have become fearful that the said cemetery may, after the lots therein have been sold, come to be neglected and left without care; therefore, to prevent the possibility of such results the Rosehill Cemetery Company proposes these amendments to its charter:" The act then provides that there be set apart 10 per cent of the moneys received from the sale of lots until the fund amounted to $100,000, and that it be "kept and preserved as a fund, for all time to come, for the

preserving, maintaining, and ornamenting the grounds, lots, walks, shrubbery, memorials, boundaries, structures, and all other things in and about said cemetery and belonging to said corporation, so that the purpose and intention thereof shall be carried out, and so that said grounds shall be and continue as cemetery grounds forever''; that the moneys be turned over to a board of three trustees who were owners of lots in the cemetery, who were authorized to invest the funds in certain securities to be held for the use and purpose specified and for no other purpose, and that only the income therefrom be expended. The act further provided for the acceptance of it by the board of managers of the Cemetery Company. The act was approved by the board on March 6, 1863.

The deed to the lot in question was executed October 25, 1866, from the Rosehill Cemetery Company to Harvey M. Thompson and Deville R. Holt, the terms of which were: the Cemetery Company ''does Grant, Bargain, sell and Convey'' to Thompson and Holt ''their heirs and assigns forever'' the lot in question for a consideration of $600, ''To HAVE AND TO HOLD . . . the premises as a place of interment to the said Grantee, their heirs and assigns forever, subject, however, to the provisions and restrictions of an Act of the General Assembly of the State of Illinois, entitled 'An Act to Incorporate the Rose Hill Cemetery Company,' approved February 11th, 1859, and all amendments thereto, and also subject to the conditions and limitations, and with the privileges and restrictions specified in the Rules and regulations hereto annexed, and which are made a part of the conveyances, or which the said company may hereafter make in conformity with said act, or with any amendments thereto, and the said ROSE HILL CEMETERY COMPANY does hereby covenant to and with the said Grantee, their heirs and assigns, that said Trustee, as aforesaid, is lawfully seized

of the herein above granted premises, in fee simple; that said ROSE HILL CEMETERY COMPANY have full right and power to sell and convey the same for the purposes above expressed.''

The rules and regulations on the back of the deed stated: ''All lots shall be held in pursuance of an 'Act to Incorporate the Rose Hill Cemetery Company,' and amendments heretofore or hereafter made thereto and of rules, regulations and by-laws and all amendments thereto in conformity with said act. Proprietors shall not allow interment in their lots for a remuneration, nor shall any transfer or assignment of any lot, or any interest therein be valid without the consent of said company.''

The lot in question was inherited by plaintiff's wife, an adopted daughter of the grantee Thompson. She died in November, 1926, and thereupon plaintiff became the owner of the lot. As a condition to the burial of plaintiff's wife November 10, 1926, defendant required plaintiff to pay $151 for cutting grass on the lot over a period of years, which he did under protest.

The record further discloses that plaintiff, who is more than 80 years of age, is the only member of the family who upon his decease will be buried in the lot, and that defendant company, as a condition of permitting his burial, requires him to pay $403 for cutting the grass on the lot from 1926 to 1936, and that thereafter the cost would be about $40 a year. Shortly after the death of plaintiff's wife in 1926 he took up, with defendant, the question of a sale of two portions of the lot on which no bodies were buried, stating that he did not need this space for his own burial. Defendant agreed to consent to the sale upon payment by plaintiff of $3,878.95, which included the cost—$3,030—of putting the lot under perpetual care, and the balance for the ''cost of refilling, grading and seeding the lot level,

and the unpaid grass cutting charges." Afterward plaintiff filed the instant suit.

Defendant's vice president testified that since 1901 or 1902, no lots had been sold without requiring the purchaser to provide for the perpetual care of his lot; that where a burial is sought to be made and the charge for cutting the grass has not been paid, if an affidavit is presented showing that the "person is without any means, if they are destitute, the burial will be permitted"; that no charge had been made for cutting grass until 1922 or 1923. "Labor got so high we just couldn't do it any more." Defendant also offered evidence that the charge made for cutting the grass was reasonable and in fact much below the cutting rate in similar cemeteries in the Chicago area.

Defendant contends plaintiff has no right to relief in a court of equity because he has an adequate remedy at law. We will not stop to consider the cases cited because we are clearly of opinion that if plaintiff is entitled to relief he cannot obtain adequate relief except in a court of equity. He seeks a construction of his deed, the repayment to him of $151, and an injunction against defendant's attempt to charge for the cutting of the grass, etc., as a condition precedent to the issuing of a permit for plaintiff's burial in the lot when the time comes, and that he be authorized to sell portions of the lot without restrictions or conditions sought to be imposed by defendant.

Plaintiff contends that the granting clause of the deed of the Cemetery Company through which he derived his title by inheritance, granted title in fee simple for burial purposes and that the granting clause cannot be cut down by the *habendum* clause, therefore the Cemetery Company had no right to impose the payment of $151 as a condition to the issuance of a permit for the burial of his wife, and payment of the $403 as

a condition to permitting plaintiff, when the time comes, to be buried in the lot, and the condition requiring the payment of $3,878.95 to put the lot under perpetual care, etc., are wholly unwarranted; that since he has the fee simple title to the lot, he can alienate portions of it without the consent of defendant.

The statute incorporating the Rosehill Cemetery Company and the amendments thereto are in contemplation of the law a part of the deed and must be read into it. Section 6 of the act of 1859 expressly provides that lots may be sold for the "purpose of sepulture only, and shall be transferable only by the consent of the managers, and no lot holder shall permit interment in or upon any lot held by him, for a consideration." The deed of the Cemetery Company, executed in 1866 to Thompson and Holt expressly provided that the conveyance was made subject to the provisions and restrictions of the act of 1859 and the amendment of 1863, and also subject to the "conditions and limitations, and with the privileges and restrictions specified in the rules and regulations hereto annexed." And the rules on the back of the deed specifically stated that any lot owner should not transfer or assign any lot or interest therein "without the consent in writing of the said company first had and endorsed upon such transfer or assignment." Plaintiff is not the owner of the lot in fee simple but has only an "easement for burial purposes as long as the ground is used for a cemetery," and this easement passes to the grantee's family at his death. *Brown v. Hill,* 284 Ill. 286; *People v. Bloomington Cemetery Assoc.,* 353 Ill. 534. We think it obvious that plaintiff has no right to transfer parts of the lot in question without the consent of the Cemetery Company and he is not in a position to complain that the Cemetery Company required him to put the lot under perpetual care and to pay other charges as a condition to its assent.

But plaintiff further contends that all the conditions imposed by defendant, such as the payment for cutting the grass, perpetual care, etc., were unwarranted because the lot was already under perpetual care; that it had been under such care from the time it was purchased in 1866, and that this was the view of defendant because it made no claim until about 1926, a period of almost 60 years, that the lot owner was required to pay for the cutting of the grass; that in 1923 defendant first passed a resolution providing that the expense for perpetual care, cutting and watering the grass, etc., should be done at the owner's expense and that such expense ''must be settled before the lot can be used for burial.'' We think plaintiff's contention, except his right to sell portions of the lot without the consent of the defendant, must be sustained. ''After one has purchased a lot in a cemetery the managers have no power to abridge his right to sepulture by any unreasonable limitation.'' *People v. Bloomington Cemetery Association,* 353 Ill. 534.

The Cemetery Company (a quasi public corporation, *Rosehill Cemetery Company v. Hopkinson,* 114 Ill. 209) received its charter in 1859; ''it was organized and its charter obtained for the primary purpose of devoting these lands to cemetery purposes, and of selling them out in burial lots, for profit.'' *Higgins v. Lansingh,* 154 Ill. 301. It was not until 1901 or 1902 that the company required a purchaser of a lot to arrange for perpetual care at the time of purchase.

In 1863, which was but a few years after the cemetery was chartered by the State, it proposed an amendment to its charter to the State legislature in which it was stated that the lot holders in the Cemetery Company had become fearful that after the lots were sold they might be neglected ''and left without care'' and therefore the legislature amended the charter by permitting the Cemetery Company to reserve 10 per cent

of the moneys received from the sale of lots for "preserving, maintaining, and ornamenting the grounds, lots, walks, shrubbery, memorials, boundaries, structures," etc. And after the amendment of the charter in 1863, the 10th part of the proceeds of the sale of lots was reserved for "preserving, maintaining and ornamenting of grounds, lots, walks, shrubbery, memorials, boundaries, etc." The lot in question was not sold until after the amendment of 1863. Thompson, the purchaser, paid $600 for it, and we think that defendant was required under its charter to cut the grass at its own expense and could not require the payment of this expense by plaintiff in the instant case. We therefore hold that plaintiff is entitled to the return of his $151 and that defendant be perpetually enjoined from charging or attempting to charge plaintiff with the cost of cutting the grass or taking care of the lot, but that he can not transfer parts of the lot without the consent of defendant company.

The decree of the circuit court of Cook county is affirmed in part, reversed in part and remanded with directions to enter a decree in conformity with the views expressed in this opinion.

*Affirmed in part reversed in part and remanded with directions.*

MATCHETT, J., concurs.

MR. JUSTICE McSURELY dissenting: I dissent from that part of the opinion which holds that the Cemetery Company is obligated by the charter amendment of 1863 to cut the grass on the lot in question free of charge. I read this amendment as providing means for the care of the grounds and things mentioned in the amendment—"belonging to said corporation"—and not to provide for the care of individual lots thereafter sold. This must have been the view of Thompson and

Holt, the original grantees, who, by the deed to them in 1866, accepted a provision therein that if any lot "shall, by the neglect of proprietor thereof, become unsightly," the officers of the Cemetery Company had the right to put the lot in proper order "and make a reasonable charge for the same." Manifestly, this would include cutting the grass.

To the argument that the Cemetery Company has by its actions construed this amendment as imposing on it the obligation of caring for individual lots sold, it is sufficient to say that the auditor of the Cemetery Company testified that no part of the income from this trust fund, created by the amendment, was used on a single lot but all was used to keep up the "ornamental grounds."