No. 14,174.

GASSER ET AL. *v*. CROWN HILL CEMETERY ASSOCIATION.
(84 P. [2d] 67)

Decided October 24, 1938.

Mr. M. W. SPAULDING, for plaintiffs in error.

Messrs. QUIAT & CUMMINGS, Mr. JULIUS F. SEEMAN, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS action was brought by defendant in error to restrain the plaintiffs in error from placing, or attempting to place, any foundation, markers or bronze tablets of their manufacture in Memorial Park, an exclusive burial ground belonging to defendant in error. A temporary restraining order was issued, and, after issues joined and trial on the merits, a permanent injunction was issued in accordance with the prayer of the complaint. It is to reverse that judgment that the matter is before us on writ of error. The parties will be designated as plaintiff and defendants, as they appeared below.

Plaintiff, a Colorado corporation, has owned and conducted the Crown Hill Cemetery in Jefferson county since 1907. On March 4, 1921, the following rules and regulations were adopted. ''All monuments, mausoleums, markers or other monumental structures shall be constructed of granite or standard bronze. No marker, monument, mausoleum or other structure shall be placed upon any lot until a design of the same, with specifications, has been submitted and accepted, and the location thereof on the lot approved by the Superintendent. The management reserves to itself the right to prevent the placing or to remove any structure or object which they shall deem injurious to the general good appearance of the ground and particularly to the adjoining lots.''

Some time prior to July, 1935, plaintiff conceived the

idea of making part of the property a beautiful memorial park, in which selected portion no monuments of any kind would be permitted, and the only markings to designate the graves would be uniform bronze tablets of standard composition, uniform in size, design, workmanship, lettering and finish.

To carry out this plan, plaintiff, on July 31, 1935, caused to be filed in the office of the county clerk and recorder of Jefferson county, a plat of the proposed restricted area, and the same appears in the plot book of Crown Hill Cemetery Association, designating blocks 50, 51, 53, 54, 55 and 66. Among the restrictions filed in connection with the plat, appears the following: "No monuments shall ever be permitted in this block, and the marking of graves therein is restricted to flat bronze tablets as markers, to be placed at the head of each grave, of such dimensions, materials and construction as designated by this Association, and no marker shall be placed without written approval of this Association. To preserve uniformity, style, grade, workmanship, it may require the purchase of any, and all, markers from this Association. Any marker may be removed from any grave which does not comply with the standard, rules and regulations of this Association."

Following the adoption of the above restrictions, a number of lots, units and grave spaces were sold to various individuals, including one Frank A. Below, one of the defendants. To each purchaser, a deed was given which recited, inter alia, "according to the recorded map of said block heretofore made by said Association and recorded in the office of the clerk and recorder of said Jefferson County, and subject to the restrictions therein contained," and specifically included the restriction on "placing or maintenance of markers thereon."

The rules and regulations of plaintiff, in effect at all times, provided, among other things, the following:

"Foundations and aprons will be required for all monuments, markers, mausoleums and structures of every de-

scription placed on lots and they will be constructed by the Association at the expense of the firm or person erecting same. From this rule there will be no deviation.

"Plans showing the size and material of all large monuments and superstructures, and others if requested, must accompany all orders for foundations, in order that the proper sizes, depths and prices of such foundations may be determined. All orders for foundations must be filed at the office on blanks furnished for that purpose."

About the same time, after investigation of the most desirable markers to be used, and after having received, considered and analyzed sample bronze markers manufactured and sold by defendants, plaintiff decided on those manufactured by James H. Matthews & Company of Pittsburg, Pennsylvania. Said defendants were advised that their markers were unsatisfactory and could not be placed or used in said Memorial Park.

On March 19, 1937, the defendants, with alleged permission of the superintendent, but without the written approval of the association, entered Memorial Park and proceeded to dig a hole and place a cement foundation upon the grave space owned by Frank A. Below for the purpose of placing thereon a marker manufactured by the defendants, and it was then that this action was instituted and the temporary restraining order entered.

At the trial, there was acknowledgment of service by Below and agreement by plaintiff not to ask for money judgment against either Below or his wife, and consent by Below "that the court may grant the plaintiff any injunctive relief prayed for in the complaint against the defendant, Frank A. Below * * *." It also developed at the trial that in the fall of 1936, a Gorham marker had been placed on one of the graves, and defendants contended that this constituted a waiver of the restrictions; but in testifying concerning this, the president of the plaintiff company stated "* * * it was a mistake to let that go in, and we are going to try to rectify

that." "I have regretted that since then; it is not the same."

We seriously doubt the right of any of the remaining defendants to urge any defenses here presented after Below confessed judgment. Whatever contract rights may exist between them, we are not here called upon to determine.

Below's only right was to use his "lot subject to and in conformity with the established rules and bylaws of the corporation in so far as they are not in violation of any law." 11 C. J. 63, §31; 10 Am. Jur. 503, 505, §22.

The statute under which the plaintiff was formed provides that any association organized thereunder "may enact bylaws for regulating the affairs of such corporation, not inconsistent with the laws of this state, and compel the observance thereof by suitable penalties, and may do any and all acts necessary and proper for the well ordering of the affairs of such corporation." '35 C. S. A., vol. 2, c. 41, §227, C. L. §2430.

No statute or specific constitutional provision of this state has been called to our attention which has been violated by the plaintiff corporation in the adoption of its bylaws and regulations.

It may be conceded that cemeteries owned and operated by private corporations—as is this one—may not impose rules and regulations which are arbitrary and discriminatory, but, if such regulatory provisions apply to all who acquire burial space in such cemeteries in the same manner, under like circumstances, they do not offend the law.

Regarding disposition of real estate, we have held: "It is an elementary principle of law that every owner of real estate, in fee simple, has the legal right to dispose of it either absolutely or conditionally, or to regulate the manner in which the same shall be used and occupied as he may deem best and proper, provided, however that the conditions and restrictions imposed are not

violative of the public good or subversive of public interests. Therefore, if conditions in a deed are made in good faith for a valuable consideration and nothing malum in se or malum prohibitum is stipulated for, they do not contravene public policy and should be enforced,'' in a case involving generally the same legal principles as those here under consideration. *Fusha v. Dacono Co.*, 60 Colo. 315, 153 Pac. 226.

Quoting further from the same case, page 318: ''If it [the regulation] is not unreasonable, and is founded on a legal consideration and seems necessary for the protection of the interests of the party in favor of whom it is imposed, and does not materially prejudice the interests of the public, the law upholds it.''

We cannot see how the interests of the public are or may be at all affected by this litigation. No one of the public is here complaining as to any injury or discrimination resulting to him by virtue of anything the plaintiff has done pertaining to use of the cemetery for sepulchral purposes. Certainly, the cemetery association here involved is not trying to foster a monopoly in the burial business. There must be at least a half dozen cemeteries in and near Denver, and nothing appears in the record as to any shortage of burial places. Furthermore, there is no showing that anyone has ever been refused burial privileges in Crown Hill Cemetery where there has been a compliance with the requirements of the association.

Anyone who is at all familiar with the development that has taken place in the creation of memorial parks in this country in this generation must acknowledge the truth of the reference made to Forest Lawn in California, one of the most beautiful cemeteries in the world, that such places can only be built by requiring strict adherence to uniformity in the whole scheme. Contrasting the result with the physical appearance of cemeteries in the past, we may, with propriety, say that the ends attained are not only reasonable, but desirable.

■ We deem it unnecessary to discuss the defendants' alleged defense of estoppel and consent. Facts which would constitute estoppel are not pleaded, and the evidence clearly discloses that the alleged consent was revoked without any damage to defendants, other than that for which Below was responsible. That this is true, appears also from the statement of their counsel in his reply brief, when he says, "However, not in the strict sense of waiver or estoppel, but rather in the sense of unjust discrimination and inequitable conduct * * * we respectfully rely on our previous discussion."

As to the Gorham marker, the evidence discloses that subsequent coloration revealed that it was of such a different mineral and chemical composition as to render it inconsistent with the general scheme adopted and used.

Our conclusion is that the defendants wholly failed to establish the violation of any legal duty owed them by plaintiff, and the judgment, accordingly, is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HOLLAND not participating.