(No. 24803.—

WILLIAM KNOX STEELE, Appellee, *vs.* THE ROSEHILL CEMETERY COMPANY, Appellant.

*Opinion filed December 15, 1938—Rehearing denied Feb. 14, 1939.*

STONE, J., specially concurring.

ASHCRAFT & ASHCRAFT, (CARROLL J. LORD, and RUFUS D. BEACH, of counsel,) for appellant.

FRANCIS M. LOWES, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

William Knox Steele, appellee, filed a complaint in equity in the circuit court of Cook county against the Rosehill Cemetery Company, seeking certain injunctive relief; repayment of money, and the removal of an alleged cloud on his title to a burial lot in the cemetery. The complaint was dismissed for want of equity and, on appeal, the Appellate Court for the First District, granted the injunctive relief, ordered repayment of money prayed for and denied relief on the alleged title cloud. A certificate of importance issued

by the Appellate Court brings the case here and appellee has assigned a cross-error.

The cemetery was incorporated by special act in 1859, the act constituting its charter. In 1863, it obtained from the legislature an amendment to its charter in order to establish a trust fund, the income from which was to be used to keep the cemetery from neglect. In 1866, the cemetery sold to H. M. Thompson and D. R. Holt a large burial lot for $600. By the provisions of the amendatory act of 1863, ten per cent of this sum was paid into the trust fund. In 1883, Thompson and Holt amicably partitioned their lot, Thompson receiving an area of 4670 square feet. He died in 1892, leaving his adopted daughter as his heir, and when she died in 1926, appellee, as sole heir, succeeded to her title.

From 1859, when the cemetery was started, until 1922 or 1923, it made no charge for cutting the grass upon lots it had sold. According to the testimony of its vice-president, labor charges became so high it was compelled to fix a charge of one cent per square foot per year for cutting the grass on its lots. It cut the grass upon appellee's lot of its own volition and without his express consent. It refused permission for burial of appellee's wife in the lot until he first paid accumulated grass cutting charges of $151. This he paid, under protest, in order to bury his wife with her relatives, and this amount he now seeks to recover. Shortly after the death of his wife, appellee took up with the cemetery officers the question of a sale of two portions of the lot on which no bodies were buried and which he did not need for his own burial. The portions would comprise about one-half the area of the lot. The officers offered to consent to the sale if appellee would first pay to it the sum of $3878.95, of which $3030 would be the cost of putting the sold portions, and the part which would remain to appellee, under perpetual care. The remainder would go for filling, grading and seeding the area and pay the grass cutting charges since 1926, in the amount of $403. These

negotiations were fruitless and the filing of this suit followed. Since 1902, the cemetery has not sold a lot unless the purchaser has paid to it a sum to insure its perpetual care.

In *Rosehill Cemetery Co.* v. *Hopkinson,* 114 Ill. 209, we held the appellant to be a *quasi*-public corporation, whose trustees are "bound to exercise their rights and privileges fairly and impartially; and if they undertake to act arbitrarily, or transcend their .powers to the injury of a lot owner, their action may be reviewed and controlled." *Brown* v. *Hill,* 284 ·Ill. 286, held a cemetery lot purchaser takes only an easement right of burial, to be used in accordance with the reasonable rules of the cemetery; he has a property right the law will protect. His remedy is commensurate with his rights, even to the use of injunctive processes to uphold them. A court of equity, when the right is clear and certain, will restrain an injurious interference with the enjoyment of an easement. (*Espenscheid* v. *Bauer,* 235 Ill. 172.) There is no dispute but what the appellee possesses the right to sell portions of his lot, subject to the consent of the cemetery, and that its consent cannot be withheld because of the existence of an unlawful or unreasonable rule or restriction, such as would deny a lot owner the right of its reasonable use and enjoyment. Equity is the proper forum in which to restrain any interference of the reasonable exercise of appellee's lawful rights in the lot. The same forum, having assumed jurisdiction for equitable purposes, will dispose of the other incidental legal matters. The Appellate Court was correct in holding the circuit court erred in dismissing the complaint.

It is elementary that the cemetery cannot make rules or restrictions that would transcend the rights and powers granted in the charter of 1859 and the amendatory act of 1863. The business of the appellant is conducted by a statutory board of managers. Section 4 of the act of 1859 gave the managers authority to arrange the acreage in burial lots and "dispose of burial lots on such terms and with

such conditions for the permanent care and preservation of the cemetery, or any part thereof, as they may agree upon with the purchasers; * * * and to make such rules and regulations from time to time, for the government of lot holders and visitors to the cemetery as they may deem necessary." Section 5 prohibited individual lot holders from dividing their lots, providing that lots may be "held and owned in undivided shares, and shall be free from taxation and from execution," etc. Section 6 provided that a lot, when sold, shall be used only for purpose of sepulture and "shall be transferable only by the consent of the managers." etc. The deed recited that it was made "subject, however, to the provisions and restrictions" of the special act of 1859 and of the amendatory act thereto and also "subject to the conditions and limitations, and with the privileges and restrictions specified in the rules and regulations hereto annexed, and which are made a part of the conveyances, or which the said company may hereafter make in conformity with said act, or with any amendments thereto," etc. On the back of the deed appeared the rules and regulations of the cemetery then in force.

It appears from the record that the income from the trust fund created by the amendatory act of 1863, and to which Thompson and Holt contributed, was used for the care of the whole area of the cemetery, including the lots then and thereafter sold prior to 1922. Section 1 of the act provided that the $100,000 fund was to be built up by the sequestration of ten per cent of the proceeds derived from sale of lots. The sum, according to section 2, was to be "kept and preserved as a fund for all time to come, for preserving, maintaining, and ornamenting" the cemetery grounds. The wording of the act does not indicate that the fund was to be accumulated and the income therefrom not to be used until the company had sold every lot in the cemetery. Such a view is inconsistent with the requirement of section 7 of the act that the trustees are to

expend the income or increase as fast as it accumulates. Further, the lot holders and the cemetery company are bound by the interpretation given the act by their representatives or agents. For a period of nearly sixty years the cemetery managers used the income in paying for the expense of cutting the grass on the lots sold and the holders of those lots did not have to stand such expense as a direct charge against them.

Thompson and Holt contributed to the building of the trust fund by the sequestration of ten per cent of $600, the purchase price. They purchased perpetual care for their lot and this included the cutting of the grass. The consequences of the failure of the cemetery officials to accurately estimate the cost of giving perpetual care to the lot in future years cannot be charged against appellee. Thompson and Holt were not in a position to estimate the necessary contribution they should make for perpetual care of the lot they were buying; the estimate of the cemetery officials at ten per cent the cost price was accepted by them and paid in full as part of the purchase price. The deed given to Thompson and Holt could not bind them or their heirs to pay any future charges levied against the lot unless authorized by the charter and the amendment. The cemetery company warranted in the deed that the lot conveyed was "free of all charges and incumbrances and that said company will warrant and defend the same to said grantee, their heirs and assigns forever." If, as alleged, the lot became unsightly, the blame rested squarely upon the cemetery managers for neglecting a duty they were bound by agreement to perform. No duty devolved upon appellee to care for the lot as he had the right to expect it to receive what Thompson and Holt bought for it,—*i. e.*, perpetual care.

The charter powers of the cemetery company as amended in 1863, do not authorize the making of any rule or regulation which would diminish or encumber the appellee's

right to have the perpetual care for his burial lot, which he bought and paid for. Nor does its charter enable the company to diminish or restrict, either in quality or quantity, the labor it must expend on the lot in order to maintain it as a place of sepulture. The act of 1859 was a contract between the State and the cemetery company. The amendatory act of 1863 was also such a contract; if there is any difference between the two it must be remembered the latter act was asked for by the company as a modification. (*Trustees of Dartmouth College* v. *Woodward,* 2 Wheat. 518, 4 L. ed. 629; *Town of Lake View* v. *Rosehill Cemetery Co.* 70 Ill. 191; *Ruggles* v. *People,* 91 id. 256; *Jones* v. *Loaleen Mutual Benefit Ass'n,* 337 id. 431.) These cases all hold that a charter granted a corporation by the State is a contract between the two, and subsequent legislation cannot be enacted which will impair that contract. The fact that the cemetery company established the practice of requiring lot purchasers, since 1901 or 1902, to make provision for their perpetual care by contributions to a perpetual care fund does not have any effect upon the rights of appellee. The contribution for the perpetual care of his lot was made many years ago and any subsequent actions of the company, as to lots sold since 1901 or 1902, cannot relate back to or impair his vested and contractual interest.

By cross-error the appellee has taken exception to the Appellate Court holding he only possessed an easement right of burial in the lot under the Thompson deed and that before he could sell any portion thereof he must pay the sum asked by appellant to place the area sought to be sold, as well as the area retained, under perpetual care. From the nature of the case, it is not necessary to determine the character of title held by appellee in order to settle the issues involved. We have held appellee's lot is entitled to perpetual care because Thompson and Holt paid their required statutory portion into the $100,000 trust fund at the time the lot was purchased. It follows that the cemetery com-

pany cannot impose an additional sum for perpetual care against either the lot or appellee.

The judgment of the Appellate Court, so far as it requires the cemetery to be perpetually enjoined from charging or attempting to charge the appellee with the cost of cutting the grass or taking care of the lot, and ordering restitution of the $151, is affirmed. That part which holds the cemetery company has the right to require appellee to establish a perpetual-care fund for the lot, in addition to the one required and paid when the lot was purchased, and in order to obtain the consent of the company to a transfer of parts thereof, is reversed. The cause is remanded to the circuit court of Cook county with directions to enter a decree in conformity with this opinion.

*Affirmed in part, reversed in part, and remanded, with directions.*

Mr. JUSTICE STONE, specially concurring:

I concur in the holding of the majority opinion that appellant cannot, in this case, charge appellee with the accumulated cost of grass cutting on his lot. It is apparent from the testimony of appellant's vice-president, that, until 1922, no such charge was made and this, in my opinion, prevents such recovery now.

I cannot concur, however, in the construction placed by the majority opinion on the amendment to appellant's charter in 1863. Section 2 of that amendment requires that the $100,000 fund therein provided for shall be used "for preserving, maintaining and ornamenting the grounds, lots, walks, shrubbery, memorials, boundaries, structures, and all other things in and about said cemetery, and belonging to said corporation, so that the purpose and intention shall be carried out and so that said grounds shall be and continue as cemetery grounds forever." This section includes "lots" but all things enumerated therein are, to me, plainly limited to those owned by the corporation. This is evidenced by

the language "and belonging to said corporation." Lots sold do not come within that category. The part of the purchase price paid by appellee's predecessor in title which was sequestered, went into the $100,000 fund.

These considerations, together with the fact that under the stipulations in the original deed, made after the amendment of 1863, that the purchaser shall keep the lot from becoming unsightly, show that it was not the understanding of the parties that section 2 of the 1863 amendment to appellant's charter requires that the cemetery corporation shall use that fund to cut the grass on lots which it had sold, and, in my opinion, the language of the amendment of 1863 does not justify such a construction.