Hazel Mannheimer, Plaintiff-Appellant, v. Allan I. Wolff, Jr., John B. Wolff, Kate H. Kohn and Rosehill Cemetery Company, Defendants-Appellees.

**Gen. No. 48,697.**

First District, First Division.

December 10, 1962.

Rehearing denied December 28, 1962.

Milton S. Yondorf, Jr., of Chicago, for appellant.

Allan I. Wolff, Jr., and Henry L. Kohn, of Chicago, for Allan I. Wolff, Jr., John B. Wolff and Kate H. Kohn, Executors; Ashcraft, Olson & Edmonds, of Chicago (Rufus D. Beach, of counsel), for Rosehill Cemetery Company, appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This a controversy involving uniformity of floral decorations on a cemetery lot which now contains 12 graves, and which has room for 7 more. Plaintiff seeks to enjoin the performance of a perpetual decoration contract which provides for decorations on two of the graves different from those on the other 10 graves; in the alternative, she seeks a mandatory injunction ordering the removal of one of the bodies from the lot. Plaintiff appeals from a decree allowing defendants' motion for summary judgment and dismissing the suit for want of equity.

There is no question of fact involved. The record shows that in 1886 Simon Yondorf purchased a burial lot in Rosehill Cemetery; the lot was 20 feet in depth, with front and rear dimensions of 36 and 38 feet respectively. During his lifetime, he buried his parents and an infant daughter in the lot. In 1915, Simon Yondorf himself was buried in the lot. His heirs at law were his widow and three children, one of whom is the plaintiff, Hazel Mannheimer.

In 1918, all of the heirs of Simon Yondorf, including plaintiff, joined in the execution of a quitclaim deed which purported to convey both to Charles Yondorf and to August Yondorf (brothers of the deceased Simon Yondorf) an undivided one-third interest in such cemetery lot, "to have and to hold the above granted premises as a place of interment, only subject to the rules and regulations and restrictions set forth in original deed from Rosehill Cemetery to Simon Yondorf, it being the intent of the parties, both grantors and grantees, that the grantors herein and their heirs, representatives and assigns and each of the grantees herein and their respective heirs, representatives and assigns shall have an undivided one-third interest in and to said lots hereinabove described." This deed

218

was entered upon the records of Rosehill Cemetery on or about June 3, 1918.

Prior to 1928, burials made in the lot were: Dora Yondorf, the wife of August Yondorf (1920); August Yondorf (1921); Grace Yondorf, the wife of Charles Yondorf (1923); and Minnie Yondorf, the widow of Simon Yondorf (1927).

In 1928, Charles Yondorf, under the 1918 quitclaim deed, executed an irrevocable "right of burial" in the lot in favor of David Yondorf and his wife Ida M. Yondorf. In 1931, Charles Yondorf was buried in the lot. In 1938, David Yondorf was buried in the lot pursuant to the right of burial executed in 1928 by Charles Yondorf; in February 1959, Ida M. Yondorf (widow of David Yondorf) was buried in the lot pursuant to the 1928 right of burial.

At various times contracts were entered into with Rosehill Cemetery providing for perpetual floral decorations on the graves of all of the individuals then buried in the lot. The decorations provided for are identical; they consist of planted flowers in the summer and evergreens in the winter.

On the death of Ida M. Yondorf in 1959, her defendant executors contracted with defendant Rosehill Cemetery to provide perpetual floral decorations on the graves of Ida and her husband, David Yondorf, pursuant to her will and an order of the Probate Court of Cook County. This was done in implementation of Article Two of her will, which provides:

> "It is my desire that after my death there be proper provision for permanent floral decoration of the graves of my husband and myself. If I have not made arrangements to such effect during my lifetime then I authorize my executors to deposit with Rosehill Cemetery Company such an amount as my executors deem reasonably necessary to level the graves of my husband and my-

219

self and to have fresh flowers set at the head of the graves of my husband and myself from time to time during the spring, summer and early fall months of each year, and to have the graves covered with evergreen during the winter months."

The contract provides for cut flowers on the graves of Ida and David Yondorf from the last Sunday in May for 16 consecutive Sundays, followed by evergreen decorations and an artificial wreath (the latter placed between the graves) during the winter months.

This contract is the focus of the controversy before us. Plaintiff seeks to enjoin its performance, or, in the alternative, to compel the defendants to disinter the body of Ida M. Yondorf and to remove it from the burial lot.

According to plaintiff's brief, her purpose "in this suit is to achieve attractiveness and harmony and sensible decoration" of the whole burial lot. The lack of uniformity in the decoration of the various graves, of which plaintiff complains, is as follows: the summer decorations on the graves of Ida and David Yondorf consist of cut flowers, while those on the rest of the graves consist of planted flowers; the winter decorations on the graves of Ida and David Yondorf are evergreens of a size and shape different from those on the other graves; and finally, during the winter months a wreath is placed between the graves of Ida and David Yondorf, while none of the other graves have wreaths upon them.

■ At the outset, we do not agree with defendants' contention that this is a proper case for the application of the maxim de minimis non curat lex (the law does not concern itself with trifles). We believe that a court of equity may properly consider any matter which so deeply engages the feelings of those concerned with the burial of the dead "and the sanctity of the sepulcher."

220

We have read and considered the many contentions of both sides and the numerous supporting citations. We believe that it will unduly prolong this opinion to discuss them. Plaintiff's basic contentions are: (1) the 1918 conveyance to Charles and August Yondorf was a nullity, and the right of burial executed by Charles Yondorf in favor of David and Ida Yondorf was therefore of no effect; (2) even were the 1918 conveyance effective, Charles Yondorf could give no right of burial without plaintiff's consent; (3) even were the right of burial effective without plaintiff's consent, as a lot-owner she may still require that decorations on the graves of Ida and David Yondorf conform with those on the other graves in the lot.

██ ██ Plaintiff's contention that the 1918 conveyance is a nullity is based on the premise that the interest of the heirs of an original lot purchaser is inalienable once there has been an interment in the lot. We agree with plaintiff that ownership of a cemetery lot is not the same as ownership of other real property; "a cemetery lot purchaser takes only an easement right of burial, to be used in accordance with the reasonable rules of the cemetery; he has a property right the law will protect." (Steele v. Rosehill Cemetery Co., 370 Ill 405, 408, 19 NE2d 189 (1939); Brown v. Hill, 284 Ill 286, 119 NE 977 (1918).) "This license or easement becomes the property of the family of the original grantee of the lot upon his or her decease. The fee of the lots in such case remains in the trustees of the cemetery." McWhirter v. Newell, 200 Ill 583, 590, 66 NE 345 (1903).

Though alienable prior to an initial burial, plaintiff argues that the first burial in a lot consecrates it and makes the lot completely inalienable thereafter. Plaintiff cites only one case in support of this broad rule, the New York Appellate Division case of Empire Monument Co. v. Lewis, 252 App Div 301, 299 NYS 338 (1937). The Empire Monument case relies on Daniell

221

v. Hopkins, 257 NY 112, 177 NE 390 (1931), and an examination of the opinion of the New York Court of Appeals in the latter case indicates that the holding of the court was based on a specific regulation of the cemetery there involved, and on a clause of Section 84 of the Membership Corporations Law of New York (Consol Laws c 35) then in effect, which expressly stated that "after a burial therein, [a lot] shall be inalienable . . . ." (See 177 NE at 391.) Plaintiff refers us to no Illinois case supporting the rule, nor is there any statutory law in Illinois similar to the New York statute quoted above.

■ There is authority in Illinois for the proposition that unoccupied portions of burial lots remain alienable or assignable after an initial burial. In Steele v. Rosehill Cemetery Co., 370 Ill 405, 19 NE2d 189, defendant Rosehill Cemetery sought to deny the right of a lot owner to sell a part of his lot unless he paid to Rosehill a sum for perpetual upkeep. The lot owner was a sole heir of the original lot purchaser and sought to sell two portions of the lot in which no bodies were buried, and which he did not need for his own burial. On page 408, the court said:

> "There is no dispute but what the appellee possesses the right to sell portions of his lot, subject to the consent of the cemetery, and that its consent cannot be withheld because of the existence of an unlawful or unreasonable rule or restriction, such as would deny a lot owner the right of its reasonable use and enjoyment. Equity is the proper forum in which to restrain any interference of the reasonable exercise of appellee's lawful rights in the lot."

The court held in that case that Rosehill could not withhold its consent to a transfer of parts of the lots in question.

While the Steele case does not decide the exact question before us, it does indicate that Illinois has no rule against a conveyance of an unoccupied portion of a burial lot after an initial burial, joined in by all the heirs at law, and subject to the consent of the cemetery. We conclude that the 1918 quitclaim deed did convey undivided one-third interests in the unoccupied portions of the original burial lot to Charles and August Yondorf. All persons then in existence who had any ownership interest in the lot, including plaintiff herself, joined in the execution of the deed. Rosehill Cemetery acquiesced in the conveyance and listed Charles and August Yondorf on its records as co-owners.

 Plaintiff also contends that the 1918 conveyance was void due to its violation of the rules of Rosehill Cemetery. The Cemetery rules provide that an original purchaser may designate persons to be buried on his lot; that absent such designation, his heirs may unanimously determine who among them are to be buried in the lot; that "in the event the original purchaser, or his heirs, shall not have arranged for such future burials, then the direct lineal descendants of such purchaser or spouses thereof shall, in the order of their death, be entitled to interment thereon until the lot shall be filled." Plaintiff argues that the quoted language limits the class of persons who may be buried in the lot to the lineal descendants of Simon Yondorf, and that a conveyance to brothers of Simon Yondorf can therefore convey no interest.

Another rule of the cemetery provides that "lot owners who desire to give the privilege for future interment to relations, without consideration, may file such instructions with the company in writing . . . ." This rule limits the class of persons who may be buried in a lot to "relations" instead of "direct lineal descendants." We think that the rule on which plaintiff

223

relies is an attempt to provide for the devolution of burial rights in the absence of information as to the intent of the original lot purchaser or of those who succeed to his interest. We do not believe this rule militates against the validity of the 1918 conveyance.

■ Believing the 1918 conveyance to be effective, we next consider plaintiff's contention that Charles Yondorf (grantee of a one-third interest in the 1918 deed) could give no right of burial to David and Ida Yondorf without plaintiff's consent. This situation is covered by Rosehill's rule on joint ownership: "When a lot is held jointly by two or more persons an order will be accepted from either or any of them for interment of a relative or member of his family, in such part of the lot as they may request, unless objections are made by a majority interest."

No objection was ever made to the burial of David Yondorf in 1938, and the record shows no complaint to anyone as to the decorations of his grave until 1960. Ida Yondorf, his wife, was buried in February 1959. A letter from defendant executors to plaintiff, dated March 6, 1959, indicates that copies of the will and codicil of Ida Yondorf were then mailed to plaintiff, a legatee of Ida Yondorf. The will (Article I) contains the direction of Ida Yondorf that she be buried beside the body of her husband, David Yondorf, in Rosehill Cemetery. (Both the letter referred to and the will appear in the record as exhibits attached to affidavits submitted on behalf of defendants' motion for summary judgment.) The affidavit of defendant Rosehill Cemetery avers that the filing of the complaint in this suit in July 1961, over two years after the burial of Ida Yondorf, was the first notice had of any objection to the burial of Ida Yondorf in the lot. This is not controverted by plaintiff.

■ We think that any objection to a burial under the terms of Rosehill's joint ownership rule must be

224

made within a reasonable time, especially when it is recognized that the consequence of an objection may result in the disinterment of a body. "It is the policy of the law, except in cases of necessity or for laudable purposes, that the sanctity of the grave should be maintained, and that a body once suitably buried should remain undisturbed, and a court will not ordinarily order or permit a body to be disinterred unless there is a strong showing that it is necessary and that the interests of justice require [it]." (In re Estate of Fischer, 1 Ill App2d 528, 532, 117 NE2d 855 (1954).) Plaintiff makes apparent at several points in her brief and in oral argument that her objection is not directed at the burial of Ida Yondorf but rather at the non-conforming decorations on the graves of Ida and David Yondorf. Under all these circumstances, we believe that plaintiff's objection to the burial of Ida comes too late and is now unavailing.

Finally, we consider plaintiff's contention that notwithstanding the proper burial of Ida Yondorf in the lot, plaintiff has a right as lot owner to demand uniformity of decorations. Plaintiff's argument is based on the Cemetery's rule that "during the winter months lot owners may have evergreens or wreaths placed on the graves. During the summer months lot owners may have a suitable cut flower vase . . . on graves." Reading these rules literally, plaintiff argues that *only* lot owners or their representatives are authorized to decorate graves. This is not the understanding of the Cemetery itself. According to the affidavit of Rosehill's president: "Rosehill Cemetery Company does not have, nor has it ever had, a rule or regulation . . . permitting graves on a lot to be decorated only by the lot owner. That there are thousands of lots in Rosehill Cemetery where some graves are decorated . . . in one manner and some in another; that in innumerable instances floral decora-

225

tions on different graves on the same lot do not conform to one another in type, size and shape or arrangement, and the floral decorations placed on the graves of David and Ida Yondorf˙. . . are not unusual and do not violate any rule or regulation of Rosehill Cemetery Company."

■ In Illinois, "the right to bury carries with it the right to do so according to the usual custom in the neighborhood, and undoubtedly includes the right of making mounds over and erecting stones and monuments at the graves." (Brown v. Hill, 284 Ill 286, 293, 119 NE 977; Smith v. Ladage, 397 Ill 336, 74 NE2d 497 (1947).) That the right referred to includes the right to decorate a grave within reasonable limits of taste is apparent. There is no rule of law in Illinois requiring uniform decorations on individual graves within the same burial lot. The rules of Rosehill require no such uniformity.

We conclude plaintiff has no right to require that the decorations on the graves of David and Ida Yondorf conform with those on the other graves in the instant burial lot.

For the reasons stated, the decree granting defendants' motion for summary judgment and dismissing the suit for want of equity is affirmed.

Affirmed.

ENGLISH, J., concurs.

BURMAN, P. J., dissents.

PRESIDING JUSTICE BURMAN, dissenting:
I am unable to agree with the majority of the court only in the construction placed on the right of defendants to decorate the graves in question in a manner which does not conform with decorations of the other graves in the same plot.

226

A map attached to the affidavit of the Rosehill Cemetery Company shows the lots in question are contiguous. Together they form an area thirty-six feet wide at the front, thirty-eight feet wide at the rear and twenty feet deep. There is a monument in the center of the lot. There are ten graves in the front row, those of David and Ida Yondorf being the first two from the left hand side as one looks at the lots from the front. There are two graves in the second row with room for seven more.

Beginning on January 14, 1928, a series of perpetual care contracts were entered into with Rosehill providing for decorations consisting of "planted flowers" in the summer time and "evergreens" in the winter time. These decorations have always been uniform with one another. After Ida Yondorf's death, defendants entered into a contract providing for "cut flowers" for sixteen weeks each year beginning in May, followed by evergreen decorations plus "one artificial wreath" between the graves each winter. (There are no other wreaths in the lot.)

The complaint alleges, and the answers admit, that the contracts for perpetual floral decorations have all been uniform. The defendants were requested to conform, but have refused to do so even though Ida Yondorf and her deceased husband were only given burial permission and never held title. Control of cemetery lots should not be taken from the title holders. Plaintiff, one of the title holders to the burial lots, alleges that for emotional, sentimental and religious reasons "in which she takes a deep and abiding interest," she desires uniformity, conformity and harmony in the decorations of the family plot. Defendants make no claim to consent of other title holders to decorate the graves in question in a manner inconsistent with the other graves.

"The right to bury carries with it the right to do so according to the usual custom in the neighborhood,

227

and undoubtedly includes the right of making mounds over and erecting stones and monuments at the graves; . . ." Brown v. Hill, 284 Ill 286, 293, 119 NE 977. Cf. Sherman v. Gray, 150 Me, 13, 102 A2d 867. Rosehill does not have any cemetery rules either requiring or prohibiting uniformity in decorations. The custom in the present case would appear to be the custom established by the family in the uniform decoration of the ten graves in the plot. This pattern of uniformity has continued for over twenty years. To grant plaintiff her request would not violate the terms of Ida Yondorf's will for she merely requested fresh flowers, not cut flowers. She made no request for a wreath. Indeed, it is a fair inference that Ida Yondorf decorated her husband's grave in conformity with the other graves until her death and defendants made no denial when plaintiff's lawyer so claimed in argument before us. Since granting plaintiff's request would not be against the wishes of either the title holders or the parties buried in the plots, I do not see why defendants should not comply.

We are not here dealing with a commercial lot. Plaintiff is not demanding something that could not be done in conformity with good will and cooperation of defendants. Nor would her request, which is the legal right of a title holder, involve additional expenditures by the executors. The ends attained, uniformity of decorations, are not only reasonable, but desirable. Gasser v. Crown Hill Cemetery Association, 103 Colo 175, 84 P2d 67, 69.

In my opinion, the summary judgment should be reversed and remanded with directions to take evidence to determine whether defendants have decorated the graves in question in conformity with the other graves. If not, a mandatory injunction should issue against the defendants to decorate the graves in conformity with the other graves in the lot.