# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Sperry*, 2017 IL App (3d) 150703

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF ANNE SPERRY, Deceased (JACK SPERRY, Respondent-Appellant, v. MATTHEW SPENCER, Independent Administrator of the Estate of ANN SPERRY, Deceased, Petitioner-Appellee). |
| District & No. | Third District<br>Docket No. 3-15-0703 |
| Filed | October 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 13-P-179; the Hon. Dwayne I. Morrison, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bernhard Olson II, of Galesburg, for appellant.<br><br>Molly E. Palmer and John W. Robertson, of Statham & Long, LLC, of Galesburg, for appellee. |
| Panel | PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices O'Brien and Wright concurred in the judgment and opinion. |

¶ 1 Petitioner-Appellee Matthew Spencer (Matthew) is the independent administrator of the estate of his late sister, Anne Sperry (Anne). Matthew brought an action in the circuit court of Knox County against Anne's ex-husband, Jack Sperry (Jack), the respondent-appellant in this case, seeking a declaration that Anne's estate was entitled to control the design and placement of a headstone for Anne's grave, which was located in a cemetery plot that Jack had purchased. Following a bench trial, the trial court found that Jack had gifted the cemetery plot where Anne was buried to Anne's estate and that the estate had the right to control the design and placement of the headstone. This appeal followed.

¶ 2                                                    FACTS

¶ 3 On or about September 16, 2013, Anne died in an automobile accident. At the time of her death, Anne was not married. Her ex-husband, Jack, had filed a petition to dissolve his marriage to Anne in May 2009, and a final judgment for dissolution of marriage was entered in September 2009. Jack and Anne had two children together, Jordan Sperry and Jacob Sperry. Anne also had a third child, Elizabeth Winter, who was born of another father. Anne did not leave a will.

¶ 4 At the time of her death, it was uncertain whether Anne's estate would be solvent. After Anne's death, Jack purchased two adjoining cemetery plots at Memorial Park in Galesburg, Illinois, with the intention of having a place for himself and a place for Anne to be buried. Anne was interred in one of these adjoining plots. Anne's father paid for her funeral and for the burial expenses, and he was subsequently reimbursed by Anne's estate.

¶ 5 On May 6, 2015, Matthew filed a "Petition for Authority to Place Headstone" in the circuit court of Knox County. In pertinent part, the petition alleged the following: (1) in September 2014, approximately one year after Anne's interment, Matthew and Anne's oldest child, Elizabeth Winter, selected a headstone design for Anne's grave, which was approved by Anne's father and siblings; (2) that same day, Matthew went to Jack's home to share the headstone plans with Jack and Anne's two other children, Jordan Sperry and Jacob Sperry, who were in Jack's custodial care; (3) Jack became angry and told Matthew that there were "not sufficient funds to pay for a headstone due to litigation expenses Jack had incurred as a result of contested child support matters between Jack and the [e]state"; (4) Matthew told Jack that Anne's estate would pay for the headstone; (5) Jack "informed [Matthew] of his position that the burial plot was [Jack's] property, since he paid for it, and [Jack] would not allow a headstone to be installed; (6) Jack suggested that Matthew have Anne exhumed and reinterred in a different plot; (7) due to the conflict surrounding this matter, Lacky Monument (the company that sold the headstone at issue) refused to place the headstone pending further direction from the court; and (8) after making an inquiry, Matthew believed that it could cost approximately $3000 to remove the defendant's remains.

¶ 6 In the petition, Matthew further alleged that, pursuant to the Disposition of Remains Act (755 ILCS 65/5 (West 2012)), he, as the independent administrator of Anne's estate, had the authority to control Anne's remains because Anne left no written direction on the matter, she

was not married, and her surviving children were all minors.[1] Matthew contended that the right to bury a decedent carries with it the right to erect a monument at the gravesite "according to the usual custom." He further argued that Jack paid for the plot "specifically for the purpose of burying" Anne and was "estopped from denying" that a headstone would be placed on the grave, pursuant to the usual custom. Matthew asked the trial court to enter an order (1) finding that Matthew "has a preferential right to place a headstone of his choosing" upon the existing grave of Anne Sperry, pursuant to 755 ILCS 65/5"; (2) finding that Jack purchased the grave "specifically for the purpose of burying" Anne, that Jack's participation in Anne's burial "implied that he would acquiesce in the placement of a headstone as is usual and customary," and that Jack "is estopped from preventing the placement of a headstone now that the burial has already taken place"; (3) enjoining Jack from interfering with the selection, placement, and quiet enjoyment of a headstone on Anne's existing grave; and (4) awarding "all other relief proper in the premises." In the alternative, Matthew asked the trial court to enter an order (1) granting Matthew a preferential right to apply for a permit to disinter Anne's remains and reinter them in another location and (2) enjoining Jack from interfering with said permit application or with the subsequent disinterment (should such a permit be granted).

¶ 7    Jack did not file an answer to the petition. Nor did he file a motion challenging the legal sufficiency of the petition.

¶ 8    On June 9, 2015, the trial court held an evidentiary hearing on Matthew's petition. Jack's counsel appeared on Jack's behalf and informed the trial court that Jack objected to the petition, but did not specify the basis for Jack's objection.

¶ 9    During the hearing, Matthew testified that—upon Anne's death—he, Anne's three other siblings, and Jack participated in making the funeral arrangements. Anne's father, Bruce Spencer, ultimately paid for the funeral and burial expenses.[2] Jack paid for the burial plot. It was agreed that Jack would pay for two plots, and that Anne would be buried in one of them. Matthew stated that Jack and Bruce paid for these expenses because it was uncertain at the time whether Anne's estate would have the money to pay for them. In September 2013, Anne was interred one of the burial plots that Jack bought.

¶ 10    Matthew testified that, in September 2014, he took Anne's oldest daughter, Elizabeth Winter, to Lacky Monument to obtain designs for a headstone for Anne. Matthew e-mailed the designs to Anne and Matthew's father and siblings, all of whom approved. Matthew and Elizabeth then went to Jack's house to discuss the headstone. Jack told Matthew that the proposed headstone "wasn't acceptable" and that he did not have the money to pay for a headstone. Matthew told Jack that Anne's family would pay for the headstone. According to Matthew, Jack told Matthew not to return. Thereafter, Lacky Monument refused to place the headstone Matthew had selected.

¶ 11    On cross-examination, Matthew confirmed that Jack's response to the proposed headstone in September 2014 was that the burial plot was "his property since he paid for it," and he would not allow a headstone to be installed. According to Matthew, Jack told him

---

[1]The petition also noted that Anne's surviving parent and siblings had all approved the proposed headstone.

[2]Bruce Spencer subsequently filed a claim against Anne's estate and was reimbursed for the funeral and burial expenses.

that, if Jack could not control the design of the headstone, Anne would have to be disinterred. Matthew acknowledged that the burial site had not been improved from the time Anne was interred in September 2013 through the date of the hearing. He also stated that one reason that Anne's estate had no assets, and a reason why Matthew was willing to pay for a headstone himself, was because of Jack's unpaid child support arrearages.

¶ 12    Jack testified that, after Anne's death, he met with the cemetery owner and two of Anne's siblings, but not with Matthew. He agreed to purchase two plots, one of which was to bury Anne. Jack stated that "we" (*i.e.*, he and Anne's siblings) selected the plots, but Jack paid for them. He paid approximately $800 for each plot. Jack testified that it was his intent to be buried "together" with Anne for the benefit of "our two children."[3] Jack acknowledged that he told Matthew that he would not allow placement of a headstone that Jack did not select because "he'd paid for it." However, Jack denied telling Matthew to have Anne disinterred if he wanted to select her headstone. At some point after he discussed the headstone with Matthew in September 2014, Jack took his two children to local monument companies to review headstones.

¶ 13    During cross-examination, Jack clarified that he wanted a "double wide" headstone with both his and Anne's names on it. Jack admitted that he never communicated to Matthew his desire to have a "companion" headstone. However, Jack believed that he may have spoken about the issue with Anne's sister, Maria. Jack did not claim that he told Anne's family about his alleged intent to have control over Anne's burial site.

¶ 14    After Jack's testimony concluded, the trial court indicated that it was prepared to rule. However, Matthew's counsel stated that Jack's testimony was the first she had heard about Jack's alleged intent to place a "companion" headstone on Anne's grave and that she "wish[ed] we had heard some information about an alternative proposal prior to today" because "[i]t would probably have rendered [the trial proceeding] moot." She noted that Matthew might agree to a companion headstone but stated that "we'd like to have an advance copy of what we are agreeing to" regarding the inscription on the headstone. After discussing the matter with their respective clients, the parties' counsel agreed to attempt to negotiate a settlement. However, the parties were unable to reach a settlement agreement.

¶ 15    During a hearing on July 16, 2015, the trial court ruled that the plot in which Anne was buried was "a gift by [Jack] to [Anne's] estate." Therefore, the court held that "[t]he estate may place the headstone on the lot where [Anne] is buried and put on it whatever they wish to put on." The court found that Matthew had the authority to do that as the estate's "legal representative." The court held that the other plot Jack had purchased was not gifted to the estate and was "owned by [Jack]."

¶ 16    Thereafter, each party prepared a proposed order and filed a motion for the entry of his respective order. Jack's proposed order stated that the plot where Anne is buried was accepted by the estate as a "family burial plot." On September 3, 2015, the parties argued their respective motions before the trial court. Jack's counsel argued that (1) there was no evidence in the record supporting the trial court's finding that Jack had intended to gift Anne's burial plot to the estate, (2) the evidence showed that Jack intended to purchase the lot where Anne is interred as a "family burial plot," and (3) the authorities Jack cited in his memorandum in support of his proposed order (which included cases from foreign

---

[3]Jack did not mention Elizabeth Winter or include her in his discussions of Anne's headstone.

jurisdictions and a law review article) "show[ed] that if somebody buys a plot, they inherently get with it *** the right to place the [head]stone." After reviewing his notes from the prior hearing, the trial court denied the entry of Jack's proposed order and entered the order proposed by Matthew. The court noted that, although "most" of the law cited by Jack was "correct," it was not applicable because the court had found that Anne's burial plot had been gifted to the estate. The court suggested that Jack lost the right to decide what to put on the headstone when he gifted the plot to the estate.

¶ 17    This appeal followed.

¶ 18                                    ANALYSIS

¶ 19    Jack argues that the trial court erred in finding that he gifted the cemetery plot to Anne's estate because, *inter alia*, Matthew never raised this theory in his petition or argued it before the trial court and because there was no evidence establishing the required elements of a gift, each of which must be established by clear and convincing evidence (see *e.g.*, *Barnes v. Michalski*, 399 Ill. App. 3d 254, 269 (2010); see also *Koerner v. Nielsen*, 2014 IL App (1st) 122980, ¶ 18). We do not need to address this issue because we find that the trial court's judgment may be affirmed on grounds of equitable estoppel, the theory that was clearly asserted in Matthew's petition.[4]

¶ 20    Equitable estoppel bars a party " 'from asserting rights that might otherwise have existed against [another] party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse.' " *Hahn v. County of Kane*, 2013 IL App (2d) 120660, ¶ 12 (quoting *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001)); see also *Boyer v. Buol Properties*, 2014 IL App (1st) 132780, ¶ 71 ("The general principle behind equitable estoppel is that, where a person's statements or conduct induce a party to take or forbear from action, that person will not be allowed to deny her words or acts to the detriment of the other party."). Our supreme court has ruled that equitable estoppel "may arise from silence as well as words." (Internal quotation marks omitted.) *Geddes*, 196 Ill. 2d at 314. Specifically, estoppel may arise "where there is a duty to speak and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent. It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. He cannot by his silence induce or encourage the commission of the act and then be heard to complain." (Internal quotation marks omitted.) *Id.* The party asserting estoppel bears the burden of proving estoppel by clear and convincing evidence. *Babcock v. Martinez*, 368 Ill. App. 3d 130, 142 (2006).

¶ 21    In this case, Jack testified that, when he agreed with Anne's relatives that he would buy a burial plot for Anne in September 2013, he intended to retain control over Anne's gravesite. However, he did not inform Matthew of this intention at that time. Nor did Jack convey his

---

[4]The trial court based its decision solely on the finding that a gift had been made; it did not address Matthew's equitable estoppel argument. However, this court is not bound by the trial court's reasoning, and we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on that basis. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11; see also *Kubicheck v. Traina*, 2013 IL App (3d) 110157, ¶ 28 n.3 ("we review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports").

intention to Anne's father or to any other member of Anne's family prior to Anne's burial.[5] Jack did not assert his intention to control Anne's gravesite and the design of her headstone until he met with Matthew in 2014, approximately one year after Anne was interred at the site. Pursuant to the Disposition of Remains Act, either Matthew or Anne's father had the right to direct and control the disposition of Anne's remains. 755 ILCS 65/5 (2),(5) (West 2012).[6] In Illinois, "the right to bury carries with it the right to do so according to the usual custom in the neighborhood," including "the right of making mounds over and erecting stones and monuments at the graves." (Internal quotation marks omitted.) *Mannheimer v. Wolff*, 38 Ill. App. 2d 216, 226 (1962). Because Matthew or Anne's father had the right to bury Anne, they had a legal right to control the design and placement of Anne's headstone. Accordingly, if Jack intended to assert control of these matters before Anne was buried (*i.e.*, if Jack intended to condition his offer to pay for Anne's burial plot on Anne's family surrendering their legal right to design and place a headstone), he had a duty to tell Matthew or Anne's father of his intention before Anne was interred in the plot he purchased. When Jack failed to express any such intention before Anne was buried, Matthew and Anne's father reasonably relied upon Jack's silence and assumed that Jack would not attempt to interfere with their legal right to design and place a headstone on Anne's grave. If Jack is allowed to assert a right to design Anne's headstone now, after Anne has been buried, Anne's family will be forced to disinter Anne and bury her elsewhere at their own expense or at the estate's expense. If that occurs, they will have been saddled with the costs of Anne's initial burial, her disinterment, and her reburial, not to mention the emotional toll of exhuming and reburying their loved one. It is unlikely that Matthew, Anne's father, or Anne's other surviving relatives would have agreed to bury Anne in the plot that Jack bought if they knew this would happen. In sum, if Jack is allowed to assert control over Anne's gravesite more than one year after Anne's burial, Anne's relatives and legal representatives will have relied on Jack's silence to their detriment, which is exactly what the doctrine of estoppel is designed to prevent.

¶ 22 Although Jack does not respond to Matthew's estoppel argument in his brief on appeal, he cites cases from foreign jurisdictions that hold or imply that the owner of a burial plot has

_____

[5]Jack testified that he believed that he may have told Anne's sister, Maria, about his desire to have a companion headstone at the gravesite. However, he did not specify when this alleged conversation took place or provide any details about the conversation. Moreover, Jack admitted that he never communicated his desire for a "companion" headstone to Matthew. Most importantly, as noted above, Jack did not claim that he told any of Anne's family members before Anne was buried that he intended to have control over Anne's gravesite.

[6]The Disposition of Remains Act lists the persons who have the right to control the disposition of a decedent's remains, in the priority listed, if the decedent has not left written directions on the matter. Under the Act, the right passes to the person who is serving as executor or legal representative of the decedent's estate "and acting according to the decedent's written instructions contained in the decedent's will," followed by the decedent's surviving spouse, followed by a surviving competent child, followed by a surviving competent parent. 755 ILCS 65/5 (2)-(5) (West 2012). Matthew served as the legal representative of Anne's estate, but because Anne left no will with instructions for her legal representative, Matthew was not "acting under the decedent's written instructions contained in the decedent's will." Thus, it is unclear whether Matthew would have first priority to control the disposition of Anne's remains under the statute. If not, that right would fall to her father because Anne had no spouse and her children were minors (and, therefore, were not legally competent).

- 6 -

a legal right to control the design and placement of a grave or headstone, which trumps whatever right a surviving spouse or relative would otherwise have to such control. These cases do not control in Illinois. As noted above, in Illinois, the Disposition of Remains Act determines who has the right to control the disposition of a decedent's remains. 755 ILCS 65/5 (West 2012). Whoever has that right (in this case, either Matthew or Anne's father), also has the right to design and place a headstone. *Mannheimer*, 238 Ill. App. 2d at 226. But even assuming *arguendo* that Jack, as the owner of the plot, had the right to control the headstone, given the statutory right vested in Matthew or Anne's father under the Disposition of Remains Act, Matthew had a duty to assert his right to control the headstone prior to Anne's interment. See *Geddes*, 196 Ill. 2d at 314 ("It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right." (Internal quotation marks omitted.)).

¶ 23    Accordingly, we hold that the elements of estoppel have been proven by clear and convincing evidence, and we affirm the trial court's judgment granting Matthew's petition.

¶ 24                                    CONCLUSION

¶ 25    For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

¶ 26    Affirmed.