**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210291-U

Order filed November 21, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| RAYMOND J. TRAPP, JR., | ) | Tazewell County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-21-0291 |
| and | ) | Circuit No. 18-D-258 |
| | ) | |
| FELICIA E. TRAPP, | ) | Honorable |
| | ) | Lisa Y. Wilson, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court's distribution of marital property, after a trial on disputed financial issues, was not an abuse of discretion where the husband presented competent evidence of the value of both of his businesses. The distribution of the businesses to the husband, with a cash payment to the wife, as modified to reflect increased equity, resulted in an equitable distribution of the marital assets. The trial court's child support order was reversed and remanded for recalculation of the husband's income.

¶ 2    The respondent wife appealed from a trial court's judgment of dissolution of marriage from petitioner husband, challenging a number of disputed financial issues.

¶ 3                                                    FACTS

¶ 4        The petitioner husband, Raymond J. Trapp, Jr., and the respondent wife, Felicia E. Trapp, were married on June 23, 2001. Two children were born of the marriage, Z.T., born on October 14, 2001, and R.T., born on October 18, 2003. On July 19, 2018, the husband filed a petition for dissolution of that marriage. A trial on disputed financial issues was held on August 4, 2020.

¶ 5        Neil Gerber, a certified public accountant and certified business appraiser, who had been doing business valuations for 30 years, was hired by the husband to conduct a business valuation for both of the husband's businesses: Ray Trapp Electric, Inc., and Trapp Properties, Inc. Both valuations were as of August 31, 2019, and both reports were dated October 31, 2019. Gerber testified that in valuing Ray Trapp Electric, Inc., he applied the asset method whereby he subtracted the liabilities and debts from the fair market value of the assets and came up with an equity value of $320,000. He valued the intangible assets of goodwill and a non-compete agreement as assets of the husband at about $90,000. When asked if that value would have substantially changed since the valuation date of August 31, 2019, especially with the COVID-19 pandemic, Gerber stated that he was not asked to update his valuation. But, Gerber testified that service work had not generally been impacted and if the husband were to testify that his income has not changed, then it was reasonable to say the value of Ray Trapp Electric, Inc., had not changed either.

¶ 6        As for Trapp Properties, Inc., Gerber testified that he was asked to value the husband's equity in that real estate entity as of August 31, 2019. Two buildings were the major assets of that entity. Gerber derived the fair market value of the original building from a July 30, 2018, Broker Opinion of Value (hereinafter market analysis) by Justin Ferrill, which Gerber obtained from the husband. The new building was just constructed in 2019, so Gerber used the cost of construction, which he obtained from the corporation's tax returns and depreciation schedules, to determine the

2

fair market value. Gerber personally inspected both buildings, and he believed it was reasonable to rely on the information that he was provided. Gerber testified that he frequently was hired to value equity in real estate partnerships, for which he relied on appraisals or other estimates of value. Gerber believed that his valuation was accurate, even though he relied on a market analysis rather than an appraisal to value the original building. Gerber determined the net equity value of Trapp Properties, Inc., by taking those two values and subtracting the two mortgages. He determined that the net equity value of Trapp Properties, Inc., as of August 31, 2019, was $20,000. Gerber could not testify as to whether the market conditions in the year since his valuation would have substantially changed the value, but Trapp Properties, Inc., had been making mortgage payments during that time, so the equity value would likely be higher. If asked to revalue the business as of the date of the hearing, Gerber testified that he would use the current loan balance, which, based on the husband's most recent financial affidavit, would make the equity value somewhere between $55,000-$60,000.

¶ 7         Gerber also valued the wife's Teacher's Retirement System fund as of November 15, 2019. Gerber determined the present marital value of the wife's pension to be $288,000, if she retired at age 55, and $275,000, if she retired at age 60.

¶ 8         The husband testified that he was a self-employed electrician. During the marriage, he started Ray Trapp Electric, Inc., in 2002 and Trapp Properties, Inc., in approximately 2015. The husband was the only shareholder owner in Ray Trapp Electric, Inc. He was responsible for bidding jobs and he had employees who went to the work sites. He paid himself a salary, which was about $42,000 in 2019. In addition to his salary, the husband paid some personal bills directly from Ray Trapp Electric, Inc., totaling about $1900 a month. The husband testified that the increase in cash on hand for Ray Trapp Electric, Inc., from around $28,000 at the time the business

3

valuation was done in 2019, to $106,341 as of June 30, 2020, was partially due to COVID-relief funding. Those funds had been placed in a separate account, and were used for the proper purposes, which freed up other funds in the Ray Trapp Electric, Inc., account. Otherwise, the difference was due to the timing during the month, and a large electrical supply bill had just been paid that would exhaust most of the difference. The husband testified that his 2019 income tax return for Ray Trapp Electric, Inc., indicated ordinary business income, or a profit, of $23,021. The husband testified that was not profit but rather was a distribution to pay some bills for Trapp Properties, Inc.

¶ 9 The husband testified that, with respect to the two buildings owned by Trapp Properties, Inc., $390,000 was owed on the original building and $434,000 was owed on the new building. Although his financial affidavit also listed $000 a month in rental income, the costs of the mortgages, insurance, and maintenance on the buildings exceeded that amount. The husband testified that he started Trapp Properties, Inc., as basically his retirement plan; he intended to pay the buildings off over time and collect rental income when he retires. He acquired the mortgage to construct the new building after he filed for divorce. The market analysis was completed by Ferrill, who was the husband's friend and real estate broker, for the bank for the purpose of obtaining a loan for the new building. The original building had five spaces for rent; two and a half were occupied by Ray Trapp Electric, Inc., and two others were rented to tenants. The new building had four tenants. On his financial affidavit, the husband valued the original building at $426,000 and the new building at $480,000. The husband testified that he had two life insurance policies with cash values, for which Ray Trapp Electric, Inc., paid the premiums.

¶ 10 With respect to the husband's bank accounts, the husband's financial affidavit indicated that the husband had a checking (#9621) and a savings (#9962) account at CEFCU. The balance in the savings account was the husband's share from the sale of the marital home. He also had a

4

checking account (#1233) at Morton Community Bank. The husband was questioned regarding some other bank accounts that were included in the discovery. Specifically, discovery revealed a checking account (#6571) at Heartland Bank in the name of Raymond Trapp, with the balance of that account ($34,206) withdrawn on July 3, 2018. The husband testified that Heartland account #6571 was his father's account (Raymond Trapp, Sr.), and the husband identified the handwriting on the withdrawal slip as his father's handwriting. Also, discovery revealed a checking account (#2318) at Morton Community Bank, which was opened on June 13, 2020, with a balance of $35,997. That account was in the name of Raymond Trapp, Sr., with the husband listed as POD (payable on death). The husband denied that either account belonged to him, unless his father was to pass away.

¶ 11　　　　The wife's attorney questioned the husband regarding July 2020 mortgage documents from the bank. The loan documents regarding the new building showed a loan balance of $458,124, with a collateral value of $1,850,000, and a monthly payment of $3305. The documents indicated that the loan on the original building had a principal balance of $376,041, a collateral value of $600,000, and a monthly payment of $2741. The husband testified that he did not know where the bank arrived at those collateral values. The husband was also questioned regarding a September 2018 appraisal report completed for the bank in anticipation of the new building, which valued the entire property (assuming construction of the new building) at $1,250,000. No one from the bank testified.

¶ 12　　　　The wife testified that she was a teacher for the Peoria public schools. She testified that her gross income was $63,184 in 2019, with a net income of $57,572. The wife testified that she did not pay into social security. She had credit card debt of $13,000-$14,000, but she did not provide any bills or statements to the court. About $8000 of that debt was for attorney fees; she testified

that the remainder was for living expenses. She claimed both children on her taxes in 2019, receiving federal and state tax refunds, along with a $1500 stimulus check in 2020. She did not split any of that money with the husband. The wife did not dispute Gerber's valuation of Ray Trapp Electric, Inc. She did dispute the valuation of Trapp Properties, Inc., but she did not have a separate valuation prepared.

¶ 13  The parties stipulated as to attorney fees. The husband had incurred around $20,000 in fees, of which he had paid approximately $14,600. The wife had incurred fees and costs of $22,355 and had paid $11,376. The wife still had an outstanding balance of $10,980.

¶ 14  The trial court entered a written order resolving all remaining financial issues on January 19, 2021. The trial court found that the husband's annual gross income in 2019 from Ray Trapp Electric, Inc., was $64,452. The wife's 2019 annual gross income was $72,708. Based on the respective incomes, the trial court found that maintenance was not appropriate and the wife's request for such was denied. The wife was ordered to pay child support in the amount of $60 a month for the remaining minor child. The marital residence had been sold and the parties equally divided the net proceeds. Each party was awarded their respective bank accounts, except the husband's CEFCU checking account (#9621), which was to be split equally between the parties. The parties were awarded their respective vehicles along with their respective debts. The trial court concluded that the fair market value of Ray Trapp Electric, Inc., was $320,000. It declined to include the non-compete agreement and personal goodwill of $90,000 in the valuation. It found that the fair market value of Trapp Property, Inc., using the net asset value method, was $20,000. The husband was to retain both businesses; the court declined to partition or make the parties partners in the businesses. The husband was ordered to pay the wife $170,000 as her share of the businesses, plus half the additional cash on hand at Ray Trapp Electric, Inc., which amounted to

6

an additional payment to the wife in the amount of $39,193. The husband was ordered to sell the two life insurance policies and turn over the cash values to the wife as payment toward the sums owed the wife for her half of the businesses.

¶ 15    The wife filed a motion to reconsider, arguing that the trial court erred in its valuation and distribution of the parties' assets and debts and erred in calculating the parties' respective incomes for maintenance and child support purposes. The trial court denied the motion to reconsider and entered the judgment of dissolution of marriage. The wife appealed.

¶ 16                                    ANALYSIS

¶ 17    The wife challenges a number of the trial court's findings. She argues that the trial court's valuation of Trapp Properties, Inc., at $20,000, was against the manifest weight of the evidence. She also argues that the trial court abused its discretion in its distribution of the marital assets and debts. The wife also argues that the trial court's determination of the parties' respective gross incomes for the purposes of calculating maintenance and child support was against the manifest weight of the evidence.

¶ 18    Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (the Act) provides for the division of marital property in "just proportions" and lists 12 factors for consideration. 750 ILCS 5/503(d) (West 2018). The division needs to be equitable, which does not necessarily mean mathematically equal. *In re Marriage of Zwart*, 245 Ill. App. 3d 567, 572 (1993). The valuation of marital assets generally presents a question of fact that will not be disturbed unless it was against the manifest weight of the evidence. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 56. The trial court's decision regarding the equitable distribution of the marital assets will not be disturbed absent an abuse of discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 162 (2005).

¶ 19                        A. Valuation of Trapp Properties, Inc.

7

¶ 20		The wife argues that the trial court's determination that the fair market value of Trapp Properties, Inc., was $20,000 was against the manifest weight of the evidence. In addition, the wife argues that the trial court abused its discretion in awarding the husband the two commercial properties owned by Trapp Properties, Inc., and that the properties should be sold and the net proceeds split evenly between the parties. The husband argues that the valuation was not against the manifest weight of the evidence.

¶ 21		There must be competent evidence of value in order for a court to assign a value to an item of marital property. *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 29. Although the value of real estate is generally proven through the testimony of experts who have conducted appraisals of the subject property, there is no rule of law that dictates what type of evidence constitutes "competent evidence." *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 36. That evidence must be supported by a proper foundation, based on a detailed "market analysis or inspection of the home." *Id.* ¶ 39. The burden of presenting the court with sufficient evidence to equitable value and divide marital property falls on both parties. *Blackstone v. Blackstone*, 288 Ill. App. 3d 905, 910 (1997). Valuing a business is "an art, not a science," and there is not an exact formula. *In re Marriage of Gunn*, 233 Ill. App. 3d 165, 183 (1992).

¶ 22		In this case, Gerber was not a real estate appraiser, but he was a certified business appraiser, who was hired to appraise both businesses. Since Trapp Properties, Inc., was essentially the two buildings, Gerber needed to assign values to those buildings. Gerber relied on a market analysis on the original building, which was completed by Ferrill in 2018 for the purpose of securing financing for the construction of the new building. Ferrill's analysis was not completed for the purposes of the dissolution proceedings. Since the new building was just constructed in August 2019, Gerber testified that he relied on the cost of construction, which he believed was the best

8

evidence of value for a new building. Gerber testified that he often valued equity in real estate partnerships, relying on appraisals or other estimates of value from third parties. Gerber personally inspected both buildings and, while he relied on the information that he was provided, he found that information was reliable. Thus, we find that the trial court's conclusions that there was a sufficient foundation for Gerber's determination of value, and that Gerber's valuation constituted competent evidence of the equity value in Trapp Properties, Inc., were not against the manifest weight of the evidence.

¶ 23    Also, although Gerber's valuation was completed a year before trial, it was not error for the trial court to rely on his valuation, when it was the only expert valuation before the court. First, the trial was delayed for reasons outside of the husband's control—the wife filed a motion to continue on August 30, 2019, because she needed to substitute attorneys when her original attorney became a judge and then, the matter was set for trial on March 20, 2020, but the courthouse closed for the pandemic. Moreover, the wife had a competing valuation of Ray Trapp Electric, Inc., completed, which she testified was valued at less than Gerber's valuation. It is reasonable to believe that she made a strategic choice to not get a competing valuation of Trapp Properties, Inc. See *Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 29 ("where a party does not offer evidence of an asset's value, the party cannot complain as to the disposition of that asset by the court"). Since there was no testimony explaining the basis for the collateral values on the bank statements offered by the wife, the statements were not competent evidence of value. Notably, the statements conflict with the 2018 appraisal to the bank, which estimated that the proposed market value of the whole property, after construction of the new building, would be $1,250,000. See *Hamilton*, 2019 IL App (5th) 170295, ¶ 39 (homeowner's testimony as to value of property and tax assessor fair market value were not competent evidence as to value). While a more current valuation would have been

9

useful, due to the circumstances of the delay and the wife's failure to seek her own valuation, we cannot say that it was against the manifest weight of the evidence for the trial court to accept Gerber's valuation. See 750 ILCS 5/503(f) (West 2018) (the date of valuation is the trial date or another agreed date).

¶ 24    Since there was competent evidence of the value of Trapp Properties, Inc., the trial court's distribution of the business to the husband, with a cash payment to the wife, was not an abuse of discretion. However, absent an agreement or court order to the contrary, valuation is determined as of the date of trial. *Id.* Gerber testified that the equity value of Trapp Properties, Inc., had increased due to the fact that the mortgage payments had decreased the principal balance in the year between the date of Gerber's valuation and the date of trial. The husband testified that, as of the date of trial, the balance due on both mortgages was $824,000. That was an increase in equity of $31,454 from the balances relied upon by Gerber. Thus, the value of Trapp Properties, Inc., should have been $51,454, divided equally between the husband and the wife. Since the trial court's order required the husband to pay the wife half of $20,000, the husband owes the wife an additional $15,727.

¶ 25                                    B. Other Financial Items

¶ 26    The wife argues that the trial court's distribution of the other assets and debts was an abuse of discretion. The husband contends that the trial court equitably distributed the parties' marital assets and debts, and there was no abuse of discretion.

¶ 27    The wife argues that the trial court abused its discretion in its distribution of the parties' bank accounts. The husband contends there was no abuse of discretion. We find that the parties' personal accounts were nominally different. The husband testified that two of the challenged bank accounts were actually his father's bank accounts and did not belong to the husband. The Morton

10

Community Bank savings account #2318 was in the husband's father's name (Raymond Trapp, Sr.), and the husband's only interest in the account was as a beneficiary upon his father's death. The question is whether those funds originated from Heartland Bank checking account #6571, which was closed just prior to the dissolution filing. The husband testified that account #6571 was also his father's account and identified the handwriting on the withdrawal slip as his father's handwriting. There was no testimony regarding when that account was opened. We find no abuse of discretion in the trial court's decision to not award any interest in these two accounts to the wife since the testimony indicates that these accounts were not the property of the husband or the wife. See *In re Estate of Sperry*, 2017 IL App (3d) 150703, ¶ 19 n.4 (we may affirm the trial court's judgment on any basis supported by the record).

¶ 28        The trial court ordered the husband to cash in his two life insurance policies with cash values and pay the proceeds to the wife as part payment of the money owed by the husband to the wife for the value of the businesses. The wife argues that one-half of the policies should have been her marital property. The husband argues that the trial court did not abuse its discretion. The life insurance policies had been funded by the businesses. The husband testified that he could not secure a loan for the money that he owed the wife for the total value of her share of the value of the businesses.

¶ 29        A review of the record does not indicate that the life insurance policies were included in the value of Ray Trapp Electric, Inc. Since they were marital property, the trial court's order to cash them both in and pay the proceeds to the wife was not in error, but the wife also should have been credited with half of the proceeds. Thus, only $42,029 counts toward the total payment that the trial court ordered the husband to pay to the wife.

11

¶ 30    With respect to debts, the wife argues that the trial court abused its discretion in not equalizing the credit card debts. The husband contends that the wife incurred thousands of dollars in debt after they separated. The wife acknowledged at trial that the credit card debt was incurred after the dissolution was filed, and about $8000 of the $14,000 in credit card debt was for her attorney fees.

¶ 31    The trial court found that the wife had incurred credit card debt in her own name in the amount of $14,217.87, and the wife had an outstanding balance for her attorney fees in the amount of $10,979.86. The husband had no personal credit card debts, but he did owe some attorney fees to his own attorney. The trial court ordered the husband to contribute $5000 toward the wife's remaining attorney fees and pay any balance that he owed to his own attorney. The wife acknowledges the $5000 but argues that the husband should have owed an additional $7598.87 to equalize the debts.

¶ 32    The wife also argues that the husband should have been ordered to pay one-half of the deficiency owed on the wife's vehicle. The wife contends that she was paying her share of the debt of the husband's vehicle, since that vehicle was included in the valuation of Ray Trapp Electric, Inc. At trial, the wife sought to retain her 2015 Chevrolet Equinox, which had a fair market value of $10,935. The trial court awarded her that vehicle, including the responsibility for the loan of $24,042.74. The wife contends that the husband is receiving an extra $6553.87 in equity by not paying one-half of the deficiency. Since the wife requested at trial that the trial court order that she keep her vehicle and the debt owed on it, we only consider whether it affects the equitable distribution of the parties' marital debt as a whole.

¶ 33    Like marital property, marital debts should be divided equitably. 750 ILCS 5/503(d) (West 2018). As noted above, the division needs to be equitable, but not necessarily mathematically

12

equal. *Zwart*, 245 Ill. App. 3d at 572. Considering the trial court's order as a whole, including the husband's ordered contribution toward the wife's attorney fees, we find that the trial court did not abuse its discretion.

¶ 34                    C. Gross Income Calculation for Child Support and/or Maintenance

¶ 35        The wife argues that the trial court's calculation of the husband's and the wife's gross incomes, and resulting maintenance and child support calculations, were against the manifest weight of the evidence. Specifically, the wife argues that the husband's annual gross income should have included annual depreciation in the amount of $64,338 from Ray Trapp Electric, Inc., and $15,929 from Trapp Properties, Inc., in addition to personal expenses that were run through the business. The wife also argues that her mandatory retirement contributions should have been deducted from her gross annual income. The husband argues that his annual gross income, from salary, rents collected, and personal expenses paid by the business, less ordinary and necessary business expenses of mortgage payments and maintenance, left him with a gross income of approximately $64,000 per year. He also argues that the current statutory scheme did not allow for the deduction of retirement savings or contribution.

¶ 36        Pursuant to section 505(a)(3)(A) of the Act, gross income includes the total of all income from all sources, not including such things as public assistance programs and child support. 750 ILCS 5/505(a)(3)(A) (West 2018). A trial court's determination of the parties' respective incomes involves factual questions that we will set aside only if they are clearly against the manifest weight of the evidence. *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 153 (2005). Of course, any question of statutory interpretation is reviewed *de novo*. *In re Marriage of Hochstatter*, 2020 IL App (3d) 190132, ¶ 21.

¶ 37        Section 505(a)(3.1) of the Act provides:

13

"Business income. For purposes of calculating child support, net business income from the operation of a business means gross receipts minus ordinary and necessary expenses required to carry on the trade or business. ***

*** The accelerated component of depreciation and any business expenses determined either judicially or administratively to be inappropriate or excessive shall be excluded from the total of ordinary and necessary business expenses to be deducted in the determination of net business income from gross business income." 750 ILCS 5/505(a)(3.1)(A) (West 2018).

¶ 38    Thus, nonaccelerated depreciation can be deducted in the calculation of net business income. as long as it is an appropriate and necessary expense to carry in the business. *Hochstatter*, 2020 IL App (3d) 190132, ¶ 24.

¶ 39    As directed in section 505(a)(1.5) of the Act, the computation of each parent's child support obligation requires a determination of each parent's monthly net income. Net income is calculated by taking the parent's gross income, "minus either the standardized tax amount calculated pursuant to subparagraph (C) of this paragraph (3) or the individualized tax amount calculated pursuant to subparagraph (D) of this paragraph (3), and minus any adjustments pursuant to subparagraph (F) of this paragraph (3)." 720 ILCS 5/505(a)(3)(B) (West 2018).

¶ 40    In determining child support and maintenance, the trial court relied on the husband's child support calculation worksheet. The husband's gross income included his salary from Ray Trapp Electric, Inc., plus the personal expenses paid by Ray Trapp Electric, Inc., resulting in an annual gross income of $64,452. As noted above, nonaccelerated depreciation may be excluded from the husband's gross income. There was no testimony at trial regarding whether any of the depreciation was appropriate and necessary to carry on the businesses, and it appears that much of the

14

depreciation was accelerated. At a minimum, we find that $38,496 in special depreciation listed on the Ray Trapp Electric, Inc., 2019 tax return was includable as income. We remand for a recalculation of the husband's gross income. Whether any depreciation can be excluded from the husband's gross income should be addressed on remand. Also, Ray Trapp Electric's 2019 ordinary business income of $23,021 is includable in the husband's gross income pursuant to section 505(a)(3.1) of the Act.

¶ 41    The husband's chart lists the wife's gross income as $72,708, which is derived from the wife's January 2020 financial affidavit. The wife's chart lists her gross income as $63,184, which is derived from her 2019 W-2. The difference is primarily from the fact that the wife does not pay Social Security taxes; rather, she has a mandatory teacher's retirement deduction. The wife argues that this deduction should have been deducted from her gross income. Section 505(a)(3)(A) of the Act makes it clear that gross income includes the total of all income from all sources, with some exceptions that do not include a mandatory retirement deduction. However, under section 505(a)(3)(B) of the Act, an individualized tax amount can be calculated, rather than a standardized tax amount, to determine net income in certain situations. *Id.* § 505(a)(3)(B). The individualized tax amount is the aggregate of federal income tax, state income tax, and "Social Security or self-employment tax, if applicable (or, if none, mandatory retirement contributions required by law or as a condition of employment) and Medicare tax calculated at the Federal Insurance Contributions Act rate." *Id.* § 505(a)(3)(D)(III). A review of the record indicates that the standardized tax amount applied by the husband resulted in a net income for the wife that was lower than the amount calculated by the wife. Thus, we find that the trial court's adoption of the husband's calculation of the wife's net income effectively allowed for the deduction of the wife's mandatory retirement contributions from her gross income, and it was not against the manifest weight of the evidence.

15

¶ 42                                    CONCLUSION

¶ 43          The judgment of the circuit court of Tazewell County is affirmed in part, as modified to reflect the additional cash payments due from the husband to the wife, resulting from the increased business equity and the wife's marital interest in the life insurance policies. The child support portion of the order is reversed and the matter is remanded for a recalculation of the husband's income for the purpose of calculating any child support or maintenance obligation.

¶ 44          Affirmed in part, as modified and reversed in part.

¶ 45          Cause remanded with directions.